## LAWS v. UNITED STATES.
### No. 831.

Circuit Court of Appeals, Tenth Circuit.
Aug. 4, 1933.

Rehearing Denied Sept. 1, 1933.

Alger Melton, of Chickasha, Okl. (Adrian Melton and Clarence McElroy, both of Chickasha, Okl., on the brief), for appellant.

W. F. Rampendahl, U. S. Atty., of Muskogee, Okl.

Before PHILLIPS and McDERMOTT, Circuit Judges, and KENNEDY, District Judge.

PHILLIPS, Circuit Judge.

Laws was convicted on counts 3 to 8, inclusive, of an indictment charging violations of section 592, title 12, USCA, and sentenced to be imprisoned for one year and one day on each of such counts, the sentences to run concurrently, and to pay a fine of $500 on count 3.

Laws was cashier of the First National Bank of Blanchard, Oklahoma (hereinafter referred to as the bank), which was a member bank of the Federal Reserve Bank of Kansas City, Missouri. The Home State Life Insurance Company had a general deposit in the bank. Laws was the local agent for the Insurance Company. On March 27, 1930, Laws, without the authority of the Insurance Company, drew a check for $500 on the Insurance Company's account, signed, "Home State Life Insurance Co., by T. J. Laws," and deposited such check to the credit of the Blanchard Realty Company. Laws, under the name of the Realty Company, was also a depositor of the bank's, and his account was then overdrawn $17.42. Both the check and deposit ticket contained this notation: "Loan to assist in handling insurance notes."

Count 3 charged that Laws by such transactions misapplied $482.58 of the money, funds, and credits of the bank, with intent to injure and defraud the bank.

On June 14, 1930, Laws drew a check on the Realty Company's account in the bank

and deposited it to the credit of the Insurance Company, and made a deposit ticket therefor. There was a notation on the check, "For Debt," and on the deposit ticket, "Blanchard Realty Co. T. J. L. (Check)."

On August 12, 1930, without the authority of the Insurance Company, Laws drew a check for $500 on the Insurance Company's account, payable to the Realty Company, and deposited it to the credit of the latter. The deposit ticket bore the notation, "Home State Life Ins. Co. Loan." The Realty Company's account was then overdrawn $330.52.

Count 4 charged that by the foregoing transactions, Laws misapplied $169.48 of the money, funds, and credits of the bank, with intent to injure and defraud the bank.

On November 1, 1930, Laws issued a check of the Realty Company for $500, and deposited it to the credit of the Insurance Company, and made a deposit ticket therefor. There was a notation on the check, "For Refund Loan," and on the deposit ticket, "Blanchard Realty Co."

On April 11, 1931, Laws, without authority of the Insurance Company, drew a check for $1700 on the account of the Insurance Company and deposited it to his account in the bank, and made a deposit ticket therefor. There was a notation on the check, "For Loan," and on the deposit ticket, "Home State Loan."

On April 11, 1931, Laws by check on his account in the bank paid the bank $1700 principal and $43.35 interest in satisfaction of his demand note to the bank dated November 8, 1930. This left a credit in his account of $12.94.

Count 5 charged that by the foregoing transaction Laws misapplied $1687.06 of the money, funds, and credits of the bank.

On April 23, 1931, Laws issued a check on his account for $1700 and deposited it to the credit of the Insurance Company.

The bookkeeper made entries of the checks and deposit tickets involved, including entries on the individual ledger sheets of the bank, in the usual and regular course of business. The deposit tickets were placed in the regular file and permanent records of the bank, and were accessible to the bank examiners and officers of the bank.

Count 6 charged that on March 28, 1930, Laws with intent to injure and defraud the bank, and to deceive the officers and directors of the bank, the Federal Reserve Bank of Kansas City, the Comptroller of the Currency, and the bank examiners, made a false entry in the individual ledger account of the Insurance Company by making, under the printed heading "New Balance," the entry: "March 28-30—$2500"; whereas in truth and in fact the liability of the bank to the Insurance Company was then $3000.

Count seven charged a like false entry on August 12, 1930.

Count eight charged that on April 11, 1931, Laws, with a like intent as that charged in count 6, made a false entry in the individual ledger account of the Insurance Company by making, under the printed heading "New Balance," the entry: "April 11-31—$165.40"; whereas in truth and in fact the liability of the bank to the Insurance Company was then $1865.40.

The evidence established the transactions alleged. The only controverted issue was that of intent. Laws testified that he intended, at the time he drew the checks on the Insurance Company's account, to return the funds to the Insurance Company; that he did not intend to injure or defraud the bank thereby; and that the credits transferred from the account of the Insurance Company to his account, went to pay his overdrafts and obligations to the bank.

He further testified that under his instructions the deposits and credits made in the account of the Insurance Company, as a result of the checks drawn by him thereon, and the deposits made by him therein, were not reflected in the statement of the Insurance Company's account furnished to it by the bank.

At the close of the evidence, counsel for Laws moved for an instructed verdict of not guilty as to counts 6, 7, and 8 on the ground that the entries correctly recorded actual transactions, and were not false entries within the meaning of the statute.

A portion of the Court's charge to the jury, which dealt particularly with the misapplication counts, is set out in Note [1].

---

[1] "If he took this money over and placed it in his account and used it for his own personal benefit without authority and without right to do so from this bank that was misapplication of the funds. Of course in this case, as well in all cases, there must be a wrongful intent. That is an intent to do a wrong contrary to law, to do something prohibited by law. On the question of intent the law presumes that every person intends the natural and ordinary consequences of his acts. Wrongful acts, knowingly and intentionally committed, cannot be justified on the ground of innocent intent. The intent to injure or defraud is proven when the wrongful act which results in loss or injury is proven to have been wrongfully committed. The intent to defraud does not mean malice, or ill will, but such intent to defraud as may be inferred from knowingly and wilfully doing that which is illegal, and which in its

Requested instructions Nos. 1 and 4 are set out in Note [2].

■■ I. In cases where a specific intent is an essential element of the offense charged, the presumption that a person is presumed to intend the necessary and natural consequences of his voluntary act is not a conclusive but a rebuttable presumption. McCallum v. United States (C. C. A. 8) 247 F. 27, 32, 33; Cummins v. United States (C. C. A. 8) 232 F. 844, 846; McKnight v. United States (C. C. A. 6) 115 F. 972.

Here, the intent, which is an element of the offense charged, is a specific rather than a general intent. Cummins v. United States, supra; Read v. United States (C. C. A. 8) 42 F.(2d) 636; Bishop v. United States (C. C. A. 8) 16 F.(2d) 410.

In the Cummins Case, the court said: "The law presumes that every person intends the natural consequences of his act knowingly committed, but in a case like this, in which a specific intent accompanying the act is a necessary element of the offense charged, the presumption is not conclusive, but is probatory in character. It is for the consideration of the jury in connection with the other evidence upon the subject."

■ In that portion of the charge set out in Note [1], the court instructed the jury that the intent to injure or defraud the bank is a general rather than a specific intent, and that the presumption, that a person intends the natural consequences of his wrongful act knowingly committed, is conclusive proof of intent to injure or defraud. This was error. It was prejudicial because there was other evidence tending to rebut such presumption, which it was the duty of the jury to consider, along with the presumption, in determining the issue of intent. It virtually withdrew from the consideration of the jury the sole defense interposed to the misapplication counts.

Requested instruction No. 1 correctly stated the law applicable to the instant case; it was predicated on a model instruction set out in the Cummins Case; it should have been given.

■ II. In that part of the charge set out in Note [1] the Court was dealing with the issue of intent to injure or defraud the bank in connection with the misapplication counts. The quoted portion is found in that part of the Court's instructions which has particular reference to the misapplication counts. It is limited to specific intent to injure or defraud, and makes no reference to a specific intent to deceive. Following the quoted portion of the charge, the Court took up and specifically dealt with the false entry counts. While these counts charge that the alleged false entries were made both with intent to injure and defraud the bank, and with intent to deceive the officers and directors of the bank,

---

necessary and natural consequences must injure another. It may be shown, or may be conclusively presumed, from the doing of the wrongful, fraudulent or illegal act.

"You are further instructed that in directing that these offenses or the acts which constitute them must be committed with the intent to injure or defraud the bank, the statute does not mean that it must be made to appear that the party accused had malice or ill will towards the association. These terms, as used in the statute, mean nothing more than general intent to injure or defraud, which always arises in contemplation of law when one wilfully or intentionally does that which is illegal or fraudulent, and which in its necessary and natural consequences must injure another; so that, while this offense of wilfully misapplying the moneys, funds or credits of the bank must have been committed by the accused with the intent to injure or defraud the association, that intent may be shown or may be conclusively presumed from the doing of a wrongful, fraudulent and illegal act, which in their necessary results naturally produce loss or injury to the association.

"This is the well settled rule which the law applies in both civil and criminal cases involving the question of intent. Human affairs could hardly be conducted nor civil order preserved under any other. If, therefore, the funds, money or credits of the First National Bank of Blanchard, Oklahoma, are shown to have been wilfully misapplied by the accused, and were converted to his own use whereby as a necessary, natural or legitimate consequence the association's capital is reduced, or placed beyond the control of its directors, or its ability to meet its engagements or obligation or to continue its business is lessened or destroyed, the intent to injure or defraud the bank may be conclusively presumed. Acts involving such consequences, when knowingly and wrongfully committed, establish not only the guilty intent to injure or defraud, mentioned in the statute, but they disclose moral turpitude, utterly inconsistent with an innocent intent."

[2] No. 1. "An intent to defraud the bank is an essential element of the offense of wilfull misapplication of the funds of the bank charged in the indictment. There is a presumption of law that a person intends the natural and probable effect of his intentional acts, but this presumption may be overcome by evidence. Defendant's testimony as to his intent and his acts and explanations, evidence as to whether the bank suffered actual loss, return of the money to the account in the bank from which it was withdrawn, and the facts and circumstances attending the acts of the defendant are all competent for your consideration, and after consideration, the presumption of law and all the evidence and circumstances, if you entertain a reasonable doubt as to defendant's intent to defraud the bank, you should acquit the defendant on the counts of the indictment charging wilfull misapplication of the funds of the bank with intent to defraud."

No. 4. "Entries in the books of a national bank which correctly record actual transactions of the bank as they occur, are not false entries within the meaning of the indictment against the defendant although the transactions recorded may have been unauthorized, and after considering all the evidence and circumstances, if you entertain a reasonable doubt as to whether the entries charged to be false, correctly recorded actual transactions, you should acquit the defendant on the counts of the indictment charging the making of false entries in the books of the bank."

the Federal Reserve Bank of Kansas City, the Comptroller of the Currency, and the bank examiners, the Court, in charging upon these counts, eliminated the issue of intent to injure and defraud, and submitted to the jury only the issue of intent to deceive.

We therefore conclude that the erroneous instruction upon the question of intent to injure or defraud did not mislead the jury in its consideration of counts 6, 7, and 8, and did not prejudicially affect Law's rights with respect to those counts.

■ III. An entry which reflects an actual transaction exactly as it occurred is not a false entry. Note[3]. For example, where credit has been given by an officer of the bank to a third person, although such credit was not authorized and was a fraud on the bank, an entry accurately reflecting the credit given is not a false entry. Twining v. United States (C. C. A. 3) 141 F. 41; Dow v. United States (C. C. A. 8) 82 F. 904.

But the transaction to which the entry relates must be real and substantial, and not merely formal. Billingsley v. United States (C. C. A. 8) 178 F. 653, 663.

In the case last cited, the court said: "It cannot be the law that officers of a bank may make a sham entry with the intent to deceive, and yet, merely because they go through the idle and deceitful form of making a transaction to which the entry might nominally but cannot really relate, protect themselves from the consequences of their real conduct. Such a holding would facilitate the vicious practice condemned by law."

■ In the instant case, Laws had no authority to draw checks on the account of the Insurance Company. Laws knew and, since he was a cashier of the bank, it knew (Armstrong v. Ashley, 204 U. S. 272, 27 S. Ct. 270, 51 L. Ed. 482; Chicago, St. P. M. & O. R. Co. v. Belliwith [C. C. A. 8] 83 F. 437) that he was without authority to draw checks on the Insurance Company's account.

■ The relation between a bank and its depositor is that of debtor and creditor, and the bank may not pay out a deposit without the authority or direction of the depositor, and it may not properly charge an unauthorized payment to the deposit. Note[4].

■ The balance owing on the deposit is the aggregate amount of the deposits, less payments made to the depositor or upon his authorization. Note[5].

■ The act of a third person not authorized or ratified by the depositor cannot affect the liability of the bank to the depositor, in the absence of circumstances constituting negligence by, or effecting estoppel against the depositor. Note[6].

■ It follows that the issuing of such checks by Laws, the depositing thereof in the bank, and the charging thereof to the account of the Insurance Company did not in fact reduce the balance of the Insurance Company's deposit. It remained unaffected by such unauthorized orders. The liability of the bank to the Insurance Company and its credit with the bank remained exactly the same after, as before such checks were drawn, deposited, and charged to its account. Laws and the bank knew this.

Had the charges in the indictment been predicated on the entries of credit in the account of the Realty Company because of the deposit of checks drawn by Laws on the Insurance Company's account, the case would have fallen within the principles announced in the cases cited in Note[3]. The credits, although unauthorized, were actually given. But here the reduction in the deposit of the Insurance Company, reflected by the entries, did not in fact occur.

We conclude therefore that the entries charged in counts 6, 7, and 8 did not reflect

---

[3] Coffin v. United States, 156 U. S. 432, 15 S. Ct. 394, 39 L. Ed. 481; Twining v. United States (C. C. A. 3) 141 F. 41; Dow v. United States (C. C. A. 8) 82 F. 904; Hayes v. United States (C. C. A. 8) 169 F. 101; Cooper v. United States (C. C. A. 4) 13 F. (2d) 16.

[4] Leather Manufacturers' Nat. Bank v. Morgan, 117 U. S. 96, 106, 6 S. Ct. 657, 29 L. Ed. 811; New York

Title & Mortgage Co. v. First National Bank of Kans. City, Mo. (C. C. A. 8) 51 F.(2d) 485, 77 A. L. R. 1052; Wussow v. Badger State Bank of Milwaukee, 204 Wis. 467, 234 N. W. 720, 236 N. W. 687; Irving Trust Co. v. Leff, 253 N. Y. 359, 171 N. E. 569; Federal Land Bank of Omaha v. Omaha Nat. Bank, 118 Neb. 489, 225 N. W. 471; American Lumber Sales Co. v. Fidelity Trust Co., 127 Me. 65, 141 A. 102; McCornack v. Central State Bank, 203 Iowa, 833, 211 N. W. 542, 52 A. L. R. 1297; Rogosin v. City Trust Co. of Passaic, 107 N. J. Eq. 79, 151 A. 834; Detroit Piston Ring Co. v. Wayne County & Home Sav. Bank, 252 Mich. 163, 233 N. W. 185, 75 A. L. R. 1273; Andrew v. Farmers' Sav. Bank of Colo. (Iowa) 239 N. W. 551; American Sash & Door Co. v. Commerce Trust Co. (Mo. App.) 25 S.W.(2d) 545; National Dredging Co. v. President, etc., of Farmers' Bank, 6 Pennewill (Del.) 580, 69 A. 607, 16 L. R. A. (N. S.) 593, 130 Am. St. Rep. 158; Crab v. Citizens' State Bank, 22 Idaho, 408, 126 P. 520; Guaranty State Bank & T. Co. v. Oklahoma Coal Co. (C. C. A. 5) 209 F. 350.

[5] Peart v. Schwenker, 200 Wis. 200, 227 N. W. 945; Wussow v. Badger State Bank, supra; Fed. Land Bank v. Omaha Nat. Bank, supra; Crab v. Citizens' State Bank, supra; Yarborough v. People's Nat. Bank, 162 S. C. 332, 160 S. E. 844.

[6] Crab v. Citizens' State Bank, supra; National Dredging Co. v. President, etc., of Farmers' Bank, supra; Leather Manufacturers' Nat. Bank v. Morgan, supra, 117 U. S. page 106, 6 S. Ct. 657, 29 L. Ed. 811.

the true balances on the dates entered in the deposit of the Insurance Company, and that they constituted false entries within the meaning of the statute.

The evidence tended to establish no fact to which requested instruction No. 4 could properly have applied. It follows that the motion for a directed verdict and requested instruction No. 4 were properly denied.

The judgment is affirmed as to counts 6, 7, and 8. It is reversed as to counts 3, 4, and 5 with instructions to grant Laws a new trial thereon.