Elmer E. **PHILLIPS** and Charles E. Farris, Appellants,

v.

**UNITED STATES** of America, Appellee.

Nos. 10167, 10168.

United States Court of Appeals Tenth Circuit.

Jan. 29, 1969.

Frederick E. Dickerson, Denver, Colo., for appellants.

Richard T. Spriggs, Asst. U. S. Atty., Denver, Colo. (Lawrence M. Henry, U. S. Atty., Denver, Colo., with him on the brief), for appellee.

Before MARVIN JONES, Senior Judge, Court of Claims,* BREITEN-STEIN and HICKEY, Circuit Judges.

HICKEY, Circuit Judge.

Appellant Elmer E. Phillips was convicted on two counts charging the making of false entries in the book of a national bank in violation of 18 U.S.C. § 1005. Appellant Charles E. Farris was convicted of aiding and abetting in the making of these false entries in violation of 18 U.S.C. § 2.

The three issues presented for review are: Whether there was a "false entry" made within the meaning of the statute and whether the evidence was sufficient to sustain the verdict finding Phillips guilty of making or causing the entries to be made? Farris also attacks the sufficiency of the evidence to prove his guilt as an aider and abettor. A determination of these issues favorable to Phillips would, of course, exonerate Farris. Farris presents an additional issue regarding the indictment. Farris contends that the intent to injure, deceive or defraud as required by the statute was not charged in the indictment as it related to him and therefore he should be acquitted.

Farris operated a lumber company and in order to obtain funds to carry on this business he borrowed money from the bank. The bank had a lending limit of $5,000 and Farris had borrowed money up to this limit. The eleven count indictment charged that loans, made to strawmen who allegedly signed promissory notes, in fact went to the Farris account. It also charged that loans were made to fictitious borrowers under forged signatures with the loans in fact going to the Farris account. Farris was the true beneficiary of all these loans and none of the strawmen or fictitious makers received any of the money. Each loan was recorded in the discount register of the bank by a bank employee. Phillips negotiated all loans as the principal officer and president of the bank and directed the employee to make the entries reflected by the instruments he delivered. None of the records in the discount register indicated that Farris was the beneficiary of the loans. Microfilm records of the bank did, however, show that the loan proceeds were in fact going to Farris. All counts of the indictment were submitted to the jury except Count VII and the jury acquitted both appellants on all counts except V and XI. Count V alleged a loan made to Russel Anderson in the amount of $10,000 on his promissory note which in fact was not made or signed by Anderson. Count XI involved a similar transaction executed under the name of one C. R. McFarland. Both Anderson and McFarland were acquaintances of Farris, and both testified that they knew nothing of the loans, did not sign the notes, and did not own the collateral pledged by the notes.

The question of whether the entry of notes, whose alleged makers deny knowledge of their existence as well as deny they borrowed or were loaned money, was a false entry has been considered by other courts. United States v. Warn,[1] identified such a transaction as a "dummy"

---

* Sitting by designation.

1. 295 F. 328 (N.D.Idaho 1924).

note and provided that such a note was "a mere sham, a mere make-believe note, and [since] the defendant knew such to be its character, he could not rightfully carry it as a real asset of the bank, and entries purporting to exhibit it as such would be false." [2]

In United States v. Darby,[3] the court was confronted with a situation wherein the appellee made a promissory note and forged to it the name of another as co-maker. He then entered the forgery into the discount book of the national bank in which he was employed. The court stated: "The crime of making false entries by an officer of a national bank with the intent to defraud * * * includes any entry on the books of the bank which is intentionally made to represent what is not true or does not exist, with the intent either to deceive its officers or to defraud the association." [4] In the present case it is true that the microfilm entries did indicate that Farris was the beneficiary of the loans. The entries made in the discount register, however, did not indicate the proceeds were for the benefit of Farris. Even if it could be argued that the court must consider all of the records of the bank as a whole in determining whether a false entry had been made, the case of Billingsley v. United States,[5] would not allow Phillips to deny his guilt. In that case the appellant was charged with making a false entry in the books of a national bank. On appeal the appellant objected to the trial court's instruction to the jury to the effect that it made no difference that the entry was a true representation of the transaction if the entry was made with the intent of misstating the condition of the bank to another. In affirming the instruction the court said: "It cannot be

the law that officers of a bank may make a sham entry with the intent to deceive, and yet, merely because they go through the idle and deceitful form of making a transaction to which the entry might nominally but cannot really relate, protect themselves from the consequences of their real conduct. Such a holding would facilitate the vicious practice condemned by law." [6]

In Laws v. United States,[7] the Tenth Circuit adopted the reasoning of Billingsley. The court stated that although an entry which reflects an actual transaction as it occurred is not a false entry, "the transaction to which the entry relates must be real and substantial, and not merely formal," [8] citing Billingsley. In any event, the fact that other books might disclose the true nature of the discount book entry would seem to be unimportant. The Supreme Court has held that the making of a false entry in the books of a bank with intent to deceive is all that is necessary to bring the act within the meaning of the statute, and "[t]he fact that its falsity may be exposed by an examination of other books of account, does not render it any the less a false entry made with intent to deceive." [9]

The case of United States v. Harter,[10] also meets the Phillips' contention that there was no false entry. This case held that an entry in a bank's books which shows that the bank held certain notes and had made loans to the makers thereof, whereas in fact no such loans were made and the purported makers were fictitious, was false.

■ The cited authority clearly demonstrates that the entries made by Phillips were false within the meaning of the statute. Therefore the determination of

2. Id. at 331.

3. 289 U.S. 224, 53 S.Ct. 573, 77 L.Ed. 1137 (1933).

4. Id. at 226, 53 S.Ct. at 574.

5. 178 F. 653 (8th Cir. 1910).

6. Id. at 663.

7. 66 F.2d 870 (10th Cir. 1933).

8. Id. at 873.

9. United States v. Britton, 107 U.S. 655, 664, 2 S.Ct. 512, 520, 27 L.Ed. 520 (1882). The statute under consideration in Britton was § 5209 of the Revised Statutes. The history of 18 U.S.C. § 1005 shows that R.S. § 5209 is the forerunner of § 1005.

10. 116 F.2d 51 (7th Cir. 1940).

the trial court in relation to this issue was correct and cannot be overturned.

■ The second issue raised by appellants concerns the question of whether there was sufficient evidence to show that Phillips made or caused the false entries to be made and that Farris aided and abetted.

An examination of the transcript of the evidence discloses that Farris and Phillips were the principal stockholders of the lumber company which was operated by Farris. The fraudulent loans made to Farris' account ultimately inured to the benefit of this lumber company.

The record further discloses that Anderson and McFarland, the two "borrowers" whose names were forged, were known to the two appellants. Anderson had dealt with Phillips in connection with a loan which Anderson applied for but never completed and McFarland had, in the past, signed a note for the benefit of Farris. Because of these transactions the bank had acknowledged signatures of both men and Phillips, as president of the bank, had access to these signatures. Both McFarland and Anderson denied that the signatures on the notes were theirs and no effort was made by either appellant to sustain the forgeries as being authentic.

■ "In criminal cases appellate courts view the evidence in the light most favorable to the prosecution and will not weigh conflicting evidence * * *. Sufficiency of the evidence to sustain a conviction shall be determined by a consideration of the direct and circumstantial evidence, together with the reasonable inferences that may be drawn therefrom."[11] Making the permissible inferences from the recited direct and circumstantial evidence leads us to the conclusion that there was sufficient evidence upon which the jury could base a finding of guilt as to both appellants.

Finally, the form of the indictment is attacked by Farris who contends that the incorporation by reference of the allegations made in the counts as they related to Phillips was not sufficient to charge the requisite intent. As noted above the charges were sufficient to allege the elements of the crime charged against Phillips.

Fed.R.Crim.P. 7(c) provides: "Allegations made in one count may be incorporated by reference in another count." Fed.R.Crim.P. 8(b) provides: "Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count."

The cases cited by Farris to substantiate his contention do not relate themselves to the rules, but in fact predate the rules. Therefore, our examination of this problem is directed to whether or not this procedure prejudiced Farris.

■ We have held that "[t]he traditional criteria by which the legal sufficiency of an indictment is determined is whether it contains the elements of the offense charged and apprises the accused of the nature of the charge, so as to enable him to prepare a defense and to plead the judgment in bar."[12] Farris defended his case in the trial court based on the elements of the crime for which he was charged. Therefore we conclude that the indictment adequately advised him of the crime of which he was accused. Also Farris was free to move for a bill of particulars if he was unsure of the charge against him. By failing to do so he has waived the privilege.[13]

11. Collins v. United States, 383 F.2d 296, 300 (10th Cir. 1967).

12. Mims v. United States, 332 F.2d 944, 946 (10th Cir.) cert. denied, 379 U.S. 888, 85 S.Ct. 158, 13 L.Ed.2d 92 (1964).

13. Adams v. United States, 375 F.2d 635 (10th Cir.) cert. denied, 389 U.S. 880, 88 S.Ct. 117, 19 L.Ed.2d 173 (1967).

In any event in the case of Coffin v. United States,[14] the court held that an indictment which charged aiding and abetting in the violation of § 5209 of the Revised Statutes (the forerunner of 18 U.S.C. § 1005) did not require the necessity of stating the particulars of the incitement or solicitation, or of the aid or assistance.

Affirmed.

---

14.   156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481 (1895).