## STATE OF NORTH DAKOTA, Respondent, v. E. R. DAVIDSON, Appellant.

(180 N. W. 31.)

**Banks and banking — criminal law — proof under allegations of false entries in books of bank held not a variance; officer imitating false entry in book of original entry is criminally liable; proof that falsity of item was affected by other transactions is unnecessary; gain to bank officer or loss to bank is immaterial; conclusion which jury can draw from evidence properly excluded.**

In a criminal prosecution, under chapter 57, Sess. Laws 1915, for making false entries in the books of a banking association, where the information charged the defendant, the cashier of the bank, with making certain false entries in the "Daily Balance and General Ledger" of the bank, and where the evidence showed that the defendant managed the bank and was responsible for the condition of its books; and that he personally made false entries in the certificate of deposit book, a book of original entry, from which the bookkeeper in regular course carried them into the Daily Balance and General Ledger, it is *held*:

1. There is no variance between the allegations of the information and the proof.

2. A managing officer of a bank, responsible for the condition of the books and who has knowledge of the manner in which they are kept, may be charged with criminal responsibility for a false entry in the ledger made by the bookkeeper, where he, the managing officer, initiated the false entry in a book of original entry.

3. Where the information charges the defendant with falsifying specific certificate of deposit entries, resulting in the showing of a false total of certificates of deposit outstanding, it is not incumbent upon the state to prove that the falsity of the total was unaffected by other transactions.

4. In a prosecution under chapter 57, Sess. Laws 1915, for making false entries in the books of a banking association, gain to the defendant or prejudice to the banking association is not an ingredient of the offense.

5. Evidence may properly be excluded if, in the state of the record at the time it is offered, it is in its nature cumulative and calls for a conclusion of the witness which the jury can readily draw from the testimony preceding.

6. Where the defendant had corrected the false entries, and where he testified that their falsity was originally due to accident and mistake, and the corrections were made for the sole purpose of rectifying the books and making them correct, no error was committed by the trial court in sustaining objections to questions inquiring as to whether the defendant had realized any gain to himself, or whether the bank had sacrificed anything of value.

Opinion filed November 5, 1920.

Appeal from District Court of Eddy County, *Nuessle*, J.
Affirmed.

*N. J. Bothne, P. M. Mattson,* and *Edward P. Kelly,* for appellant.
*William Langer,* Attorney General, and *Albert E. Sheets,* and *James A. Manly,* State's Attorney, for respondent.

Proof of the command or procurement may be direct or indirect, positive or circumstantial, but it is a matter for the jury, and not of legal competency. Terrell, Crimes by Nat'l. Bank Officers & Agents, pp. 41, 42; Billingsley v. United States, 101 C. C. A. 474, 178 Fed. 653; United States v. Fish, 24 Fed. 593.

Where an officer of a bank knows that there is an irregularity in the mode in which the business is being carried on, and blindly verifies a statement without investigating the truth of the same, he may be convicted of making a false entry contained therein although he does not

know of its falsity. United States v. Graves, 53 Fed. 634 reversed on other grounds in 165 U. S. 323, 41 L. ed. 732, 17 Sup. Ct. Rep. 393.

BIRDZELL, J. This is an appeal from a judgment convicting the defendant of the crime of making false statements or entries in the books of a banking corporation. The appellant relies for a reversal upon two main propositions, and it will be unnecessary to do more than state the facts bearing upon these questions. It is first contended that there is a variance between the allegations of the information and the proof, and the second proposition is based upon the exclusion of certain evidence.

The information contains three counts. It alleges the commission of the offense as follows:

"On the 23d of August, in the year of our Lord one thousand nine hundred and seventeen, at the county of Eddy, in the state of North Dakota, one E. R. Davidson, late of the county of Eddy and state aforesaid, did commit the crime of subscribing and making a false statement and entry in the books of a banking association, committed in the manner following, to wit:

"Count 1: That at the said time and place the said defendant was an officer, to wit, the cashier of the Farmers & Merchants Bank, a banking association, organized and doing business under and by virtue of the banking laws of the state of North Dakota; that at said time and place the said defendant, being an officer of the said bank aforesaid, did wilfully, unlawfully, knowingly, and feloniously in the books of the said Farmers & Merchants Bank subscribe and make a false statement and entry to wit, a certain statement and entry contained in the books of the said Farmers & Merchants Bank, kept in the regular course of business by said bank, said entry being contained in a certain record book of said bank, commonly known as the 'Daily Statement and General Ledger,' of the date of August 23, 1917, which said entry purported to contain upon its face a statement of the total amount of certificate of deposit checks outstanding at the close of business on August 23, 1917, said statement and entry being contained under the head of certificates of deposit checks outstanding, showed the total sum thereof to be $342,090.46; whereas, in truth and in fact the said sum of $342,090.46 was not the total amount of certificate of deposit checks

outstanding as a liability of said bank on said date, but excluded from the said sum of $342,090.46 was the sum of $11,995, which said sum consisted of certificate of deposit No. 5465 drawn against the assets of the Farmers & Merchants Bank on the 23d day of August, 1917, in the sum of $7,340.30, payable to James E. Renferew, which said certificate of deposit was falsely entered by the defendant upon the records of the said bank and included in the said statement and entry of $342,090.46, as $340.30; whereas, in truth and in fact the said certificate of deposit No. 5465 was issued to James E. Renferew by the defendant in the actual amount of $7,340.30; and certificate of deposit No. 5425, drawn against the Farmers & Merchants Bank by the defendant on the 1st of August, 1917, payable to W. A. Gordon, which said certificate of deposit was falsely entered by the defendant upon the records of the said bank and included in the said statement and entry of $342,090.46 as $5; whereas, in truth and in fact the said certificate of deposit No. 5425 was issued to W. A. Gordon, drawn upon the Farmers & Merchants Bank by the defendant, in the actual sum of $5,000, which said certificate of deposit No. 5465 and 5425, respectively, contained a total of at least $11,995 not shown in, or contained by, and excluded from the statement and entry of $342,090.46 of said bank, purporting to be the total certificate of deposit checks outstanding for August, 23, 1917; that the said statement and entry in the amount of $342,090.46 was by the defendant falsely made to appear as the total amount of certificate of deposit checks of said bank outstanding on said date; that the said sum of $342,090.46 was not on the 23d day of August, 1917, the total amount of certificates of deposit checks outstanding as a liability of the Farmers & Merchants Bank, but that said sum of $342,090.46 was, on the 23d day of August, 1917, at least $11,995 more than the statement and entry of $342,090.46, contained in the general ledger, purporting to be the total amount of outstanding certificate of deposit checks for said date."

Counts 2 and 3 contain similar allegations with respect to the certificate of deposit transactions of Renferew and Gordon, treating them separately; that is, count 2 alleges as an independent offense the entries described in count 1 with respect to the Renferew transaction, and count 3 contains similar allegations with respect to the Gordon transaction. The defendant did not demur to the information. Hence, no

question can now be raised as to its charging more than one offense. Comp. Laws 1913, §§ 10,737 and 10,745. Counsel for the appellant concedes that the information is good, and upon this appeal relies only upon certain assignments of error appearing below.

The appellant argues that, inasmuch as the defendant is charged with making a false statement and entry in the books of the Farmers & Merchants Bank, and the entry is described as being contained in a certain record book commonly known as the "Daily Balance and General Ledger," which entry purported to contain a statement of the total amount of certificates of deposit outstanding at the close of business on August 23, 1917, and being entered under the head of "Certificates of Deposit Checks Outstanding," showing the total sum to be $342,090.-46, he cannot be convicted in the absence of proof showing that the defendant made such false entries. The evidence shows that the defendant did not personally make the entries described in the Daily Balance and General Ledger, but it further shows that he made entries in the book of original entry, from which, in due course of business, the entries in the Daily Balance and General Ledger of the bank were made. To illustrate: The evidence shows that on August 1, 1917, the defendant issued certificate of deposit No. 5425 to W. A. Gordon for $5,000; that he entered upon the certificate of deposit book the record of this certificate, stating the amount to be $5; and on the 23d day of August, 1917, he issued certificate No. 5465 to James Renferew for the sum of $7,340.30, entering it in the certificate of deposit book as $340.30. From the entry in the certificate of deposit book the items were carried into the daily cash balance book and from there posted in the Daily Balance and General Ledger, where the items enter into the total of certificates of deposit as they had been issued from time to time. The evidence shows that the defendant personally made the entries in the certificate of deposit book, and that the entries in the other books were made by the bookkeeper. It is said that this is a variance.

The statute under which the defendant was prosecuted reads as follows. Sess. Laws 1915, chap. 57 :

"Every officer, agent or clerk of any association organized under this chapter, who wilfully and knowingly subscribes or makes any false statements or entries in the books of such association, or knowingly subscribes or exhibits any false paper with intent to deceive any person

authorized to examine as to the conditions of such association, or wilfully subscribes or makes false reports, shall be punished by imprisonment in the state penitentiary not less than one nor exceeding ten years," etc.

The appellant admits that if the information had charged him with having made a false entry in the original certificate of deposit book, the proof would support the allegation and there would be no variance. But he contends that the allegations of the information cannot be supported by evidence showing false entries in books of original entry which ultimately find their way into the "Daily Balance and General Ledger." In our opinion the offense described in the statute is committed whenever a person wilfully and knowingly makes a false entry in any of the books of a banking association; and, within the purview of the statute, one making an original false entry "makes a false entry" in every book which is made up in regular course from the entry or entries in the book of original entry. The pleader can charge the offense to have been committed with respect to any book in which the false entry is carried, but he must, of course, be prepared to prove that the defendant either personally made the entry, specifically directed it to be made, or knowingly directed it through his general control of the manner in which the books were kept. It is admitted in this case that throughout the entire period covered by the transactions in question, and in fact for a long time prior thereto, the defendant was the cashier of the bank, and, as such, in charge of the books in a supervisory capacity; that he was responsible for the general management of the bank and the condition of its books. It is well established that where one sustaining this relation to a bank makes the initial false entry, he is criminally responsible for the acts of other employees in carrying the entry forward into the other books of the bank. Terrell, Crimes by Nat. Bank Officers & Agents, pp. 41, 42; Morse v. United States, 98 C. C. A. 321, 174 Fed. 539, 20 Ann. Cas. 938, and note at page 947; Billingsley v. United States, 101 C. C. A. 465, 178 Fed. 662. Under the principles established by these authorities it is clear that there was no variance in the case at bar.

The further contention is advanced that the state, having alleged the false entry in the daily statement and general ledger as of specific dates affecting the total sum of the certificates of deposit outstanding on

these dates, assumed the burden of establishing that the falsity of the total sum so carried forward was not affected by any prior entry, and that in order to sustain this burden it should have been required to establish the correctness of the total save as it is affected by the false entries charged. It is said that otherwise the defendant might be convicted on account of false entries made so far back that the Statute of Limitations had run against the offense. There is no merit in this contention. The information and the proof so connect the false total with the specific false entries as to leave no doubt of the manner in which the total was affected by the false certificate of deposit entries. It was not incumbent upon the state to establish that there had not at some prior time been counterbalancing false entries. The defendant is not charged alone with carrying forward a false total. He is charged with carrying a false total in connection with certain specific false entries.

The next proposition advanced is that the court erred in sustaining objections to the following questions:

Q. Mr. Davidson, referring back to the two exhibits, state's exhibits 1 and 23, upon which a mistaken entry appears to have been made in each case by you, I will ask you if, in either of these transactions, you realized or acquired any profit or interest to yourself?

Q. By either of the transactions or both of them, do you know of any loss or anything which the bank with whom you were employed, the Farmers & Merchants Bank, sacrificed any property or anything of value by reason of these mistaken entries?

Neither gain to the defendant nor loss or prejudice to the bank or to the public is made an ingredient of the offense defined in the statute. It is made an offense to wilfully and knowingly make a false entry. So the answer of the defendant to the above questions would not have disproved any ingredient of the crime. But it is urged that he should have been thus permitted to testify to the absence of motive. While we are mindful that the law has established a broad range of inquiry for the purpose of establishing motive in criminal cases, we are satisfied, upon the record before us, that no prejudicial error was committed in sustaining objections to the above questions. The record discloses that the defendant went upon the witness stand and testified in great detail concerning the manner in which the false entries were made. He stated that they were false from pure accident and mistake. He was permitted

to go into every circumstance connected with the immediate issuance of the certificates and the making of the entries that might reasonably be supposed to have a bearing upon the question as to whether it was done by mistake and accident in the manner testified to by him. In his testimony he not only accounted for the way in which the entries happened to be falsely made, but he also told the manner in which he corrected the entries later on. He also stated that his purpose in making the subsequent entries was to balance and rectify the books, and that this was his purpose in making the corrections. His testimony in fact is so replete with the statement that he never intended to make a false entry, that any false entries were made by mistake, and that he later on rectified the mistakes so as to make the books correct, that direct testimony which would only negative private gain to himself and prejudice to the bank would be purely cumulative. It would also be in the nature of a mere conclusion from the facts as testified to by him. If the jury believed the defendant's version, they must have believed that he never made any profit through these mistakes, and that the bank never suffered.

On the whole record we are satisfied that the defendant had a fair trial and that the issues were properly submitted to the jury. Finding no error, the judgment is affirmed.

CHRISTIANSON, Ch. J., and BRONSON, J., concur.

GRACE, J. (dissenting). This appeal is from a judgment convicting the defendant of the alleged crime of making false statements or entries of the books of a banking corporation. As we view the case, there is in law no proper or legal information, and hence there could be no judgment, nor did the court have authority or power to pass sentence, and this is our opinion, for two reasons: First, the information does not, in law, charge any offense; second, it attempts to charge three seperate and distinct crimes.

In order to understand fully the fatal defects of the information, it should be set forth in full. Excluding title, it is as follows:

"To the District Court in and for Said County.

"James A. Manly, State's attorney in and for the said county of Eddy and state of North Dakota, in the name and by the authority of

the state of North Dakota, informs this court that heretofore, to wit, on the 23d day of August, in the year of our Lord one thousand nine hundred and seventeen, at the county of Eddy in the state of North Dakota, one E. R. Davidson, late of the county of Eddy and state aforesaid, did commit the crime of subscribing and making a false statement and entry in the books of a banking association, committed in the manner following, to wit:

"Count 1:   That at the said time and place the said defendant was an officer, to wit, the cashier of the Farmers & Merchants Bank, a banking association organized and doing business under and by virtue of the banking laws of the state of North Dakota; that at the said time and place the said defendant, being an officer of the said bank aforesaid, did wilfully, unlawfully, knowingly, and feloniously, in the books of the said Farmers and Merchants Bank, subscribe and make a false statement and entry, to wit, a certain statement and entry contained in the books of the said Farmers & Merchants Bank, kept in the regular course of business by said bank, said entry being contained in a certain record books of said bank, commonly known as the 'Daily Statement and General Ledger,' of the date of August 23, 1917, which said entry purported to contain upon its face a statement of the total amount of certificate of deposit checks outstanding at the close of business on August 23, 1917, said statement and entry being contained under the head of Certificate of Deposit Checks Outstanding, showed the total sum thereof to be $342,090.46; whereas, in truth and in fact the said sum of $342,090.46 was not the total amount of certificate of deposit checks outstanding as a liability of said bank on said date, but excluded from the said sum of $342,090.46 was the sum of $11,995, which said sum consisted of certificate of deposit No. 5465, drawn against the assets of the Farmers & Merchants Bank on the 23d of August, 1917, in the sum of $7,340.30, payable to James E. Renfrew, which said certificate of deposit was falsely entered by the defendant upon the records of the said bank and included in the said statement and entry of $342,090.46, as $340.30; whereas, in truth and in fact the said certificate of deposit No. 5465 was issued to James E. Renferew by the defendant in the actual amount of $7,340.30; and certificate of deposit No. 5425, drawn against the Farmers & Merchants Bank by the defendant on the 1st of August, 1917, payable to W. A. Gordon, which said

certificate of deposit was falsely entered by the defendant upon the records of the said bank and included in the said statement and entry of $342,090.46 as $5; whereas, in truth and in fact the said certificate of deposit No. 5425 was issued to W. A. Gordon, drawn upon the Farmers and Merchants Bank by the defendant, in the actual sum of $5,000, which said certificates of deposit, No. 5465 and No. 5425, respectively, contained a total of at least $11,995 not shown in, or contained by, and excluded from, the statement and entry of $342,090.46 of said bank, purporting to be the total certificate of deposit checks outstanding for August 23, 1917; that the said statement and entry in the amount of $342,090.46 was, by the defendant, falsely made to appear as the total amount of certificate of deposit checks of said bank outstanding on said date; that the said sum of $342,090.46 was not on the 23d of August, 1917, and has not been since the 1st of August, 1917, the total amount of certificate of deposit checks outstanding as a liability of the Farmers & Merchants Bank, but that said sum of $342,090.-46 was on the 23d of August, 1917, at least $11,995 more than the statement and entry of $342,090.46 contained in the General Ledger, purporting to be the total amount of outstanding certificate of deposit checks for said date.

"Count 2: That at the said time and place the said defendant was an officer, to wit, the cashier of the Farmers & Merchants Bank, a banking association organized and doing business under and by virtue of the banking laws of the state of North Dakota; that at the said time and place the said defendant, being an officer of the said bank aforesaid, did wilfully, unlawfully, knowingly, and feloniously, in the books of the said Farmers & Merchants Bank, subscribe and make a false statement and entry, to wit, a certain statement and entry contained in the books of the said Farmers and Merchants Bank, kept in the regular course of business of said bank, said entry being contained in a certain record book of said bank commonly known as the 'Daily Statement and General Ledger,' of the date of August 23, 1917, which said entry purported to contain upon its face a statement of the total amount of certificate of deposit checks outstanding at the close of business on August 23, 1917, which statement and entry being contained under the head of 'Certificate of Deposit Checks Outstanding,' showed the total sum thereof to be $342,090.46; whereas, in truth and in fact, the said sum of $342,090.46

was not the total amount of certificate of deposit checks outstanding as a liability of said bank on the said date, but excluded from the said sum of $342,090.46 was the sum of $7,000, which said sum consisted of and was included in certificate of deposit No. 5465, drawn against the Farmers & Merchants Bank by the defendant on the 23d of August, 1917, payable to James E. Renferew, which said certificate of deposit was falsely entered by the defendant upon the records of said bank, and included in the said statement and entry of $342,090.46 as $340.30; whereas, in truth and in fact, certificate of deposit No. 5465, drawn upon the Farmers & Merchants Bank, was issued to James E. Renferew by the defendant in the actual amount of $7,340.30, which said certificate of deposit No. 5465 contained the sum of $7,000 not shown in, or contained by, and excluded from, the sum of $342,090.46, purporting to be the statement and entry showing the total amount of certificate of deposit checks outstanding for August 23, 1917; that the said statement and entry in the amount of $342,090.46 was, by the defendant, falsely made to appear as the total amount of certificate of deposit checks of said bank outstanding on said date; that the said sum of $342,090.46 was not on the 23d of August, 1917, the total amount of certificate of deposit checks outstanding as a liability of the Farmers & Merchants Bank, but that said sum of $342,090.46 was on the 23d of August, 1917, at least $7,000 more than the statement and entry of $342,090.46, contained in the General Ledger, purporting to be the total amount of outstanding certificate of deposit checks for said date.

"Count 3: That at the said time and place the said defendant was an officer, to wit, the cashier of the Farmers & Merchants Bank, a banking association organized and doing business under and by virtue of the banking laws of the state of North Dakota; that at the said time and place the said defendant, being an officer of the said bank aforesaid, did wilfully, unlawfully, knowingly, and feloniously, in the books of the said Farmers & Merchants Bank, subscribe and make a false statement and entry, to wit, a certain statement and entry contained in the books of the said Farmers & Merchants Bank, kept in the regular course of business by said bank, said entry being contained in a certain record book of said bank, commonly known as the 'Daily Statement and General Ledger,' of the date of August 23, 1917, which said entry purported to contain upon its face a statement of the total amount of

certificate of deposit checks outstanding at the close of business on August 23, 1917, said statement and entry being contained under the head of 'Certificate of Deposit Checks Outstanding,' showed the total sum thereof to be $342,090.46; whereas, in truth and in fact, the said sum of $342,090.46 was not the total amount of certificate of deposit checks outstanding, as a liability of said bank on said date, but excluded from the said sum of $342,090.46 was the sum of $4,995, which said sum consisted of certificate of deposit No. 5425, drawn against the assets of the Farmers & Merchants Bank on the 1st of August, 1917, in the sum of $5,000, payable to W. A. Gordon, which said certificate of deposit was falsely entered by the defendant upon the records of the said bank and included in the said statement and entry of $342,090.46 as $5; whereas, in truth and in fact, the said certificate of deposit No. 5425 was drawn upon the Farmers & Merchants Bank and issued to W. A. Gordon by the defendant in the actual sum of $5,000, which said certificate of deposit No. 5425 contained $4,995 not shown in, or contained by, and excluded from, the statement and entry of $342,090.46, purporting to be the total amount of certificate of deposit checks outstanding for August 23, 1917; that the said statement and entry in the amount of $342,090.46 was by the defendant falsely made to appear as the total amount of certificate of deposit checks of said bank outstanding on said date; that the said sum of $342,090.46 was not on the 23d of August, 1917, and has not been since the 1st of August, 1917, the total amount of certificate of deposit checks outstanding as a liability of the Farmers & Merchants Bank, but that said sum of $342,090.46 was on the 23d of August, 1917, at least $4,995 more than the statement and entry of $342,090.46 contained in the Daily Statement and General Ledger, purporting to be the total amount of outstanding certificate of deposit checks for said date.

"This against the peace and dignity of the state of North Dakota and contrary to the form of the statutes in such cases made and provided.

"Dated this 11th day of February, 1920.

"James A. Manly,
"State's Attorney in and for Eddy County, North Dakota."

Section 10,688, Comp. Laws 1913, provides that "the information or the indictment must charge but one offense, but the same offense may be set forth in different forms or degrees, under different counts; and

when the offense may be committed by the use of different means, the means may be alleged in the alternative in the same count."

The merest inspection of the foregoing information will disclose that it charges three separate and distinct offenses, and, for this reason, the information is wholly bad and will not support a judgment. State v. Smith, 2 N. D. 515, 52 N. W. 320.

The mode of pleading adopted in charging the commission of the various crimes set forth in the information is similar to that which obtains in the Federal court, where such proceeding is in use, authorized by the Federal statute. Such mode of pleading, however, can have no application in our state court, for the information here must be in accordance with the provisions of § 10,688, supra, and must charge but one offense. It cannot be disputed but that the information under consideration charges three distinct crimes. It is impossible, in such condition, for defendant to know, from the verdict of the jury, of which of the three he was convicted. It is certain, however, that he was charged with, and tried for, the commission of three separate and distinct offenses.

The information is wholly bad, for the reason that it charges no crime. It was evidently intended, by it, to charge an offense under chapter 57, Session Laws of 1915, which provides: "Every officer, agent, or clerk, of any association, organized under this chapter, who wilfully and knowingly subscribes or makes any false statements or entries in the books of such association, or knowingly subscribes or exhibits any false papers with intent to deceive any person authorized to examine as to the condition of such association, or wilfully subscribes or makes false reports, shall be punished by imprisonment in the state penitentiary, not less than one nor exceeding ten years, or in the county jail not exceeding one year, or by a fine not exceeding $10,000, or by both such fine and imprisonment."

It is not alleged in the information, in charging either of the three separate offenses, that any false entries were made in the books of the corporation there mentioned, with intent to deceive any person authorized to examine as to the condition of such association. It is clear that, if such an entry were made, but with no intent to deceive anyone, it would be no crime. If it were otherwise, one making a false entry, though innocently, might be just as liable to prosecution and punish-

ment as one who intentionally makes the false entry. This must be true, if the statute means anything.

We have another view in reference to chapter 57. That chapter is an amendment of § 5174, Comp. Laws 1913. The latter act was quite similar to chapter 57, only that it provided that false entry or entries in the books of such association, by an officer or agent, etc., with the intent to deceive any person authorized to examine as to the condition of such association, etc., was guilty of forgery, as defined in the Penal Code. That section did not say forgery in what degree, and there are four different degrees set forth in the Penal Code. This being true, the penalty for the offense was uncertain, and it was for this reason that chapter 57 was enacted; that is, in order to make the penalty specific. But what is the nature of the crime charged by chapter 57? It is of the same nature as that charged by § 5174, before its amendment, or it is of the same nature as that now contained in § 9899, Comp. Laws 1913, which deals with false entry in public books, which, if made under the circumstances set forth in the statute, constitutes forgery.

We are firmly of the opinion that the crime charged by chapter 57 is forgery. It does not matter that the name of the crime is not mentioned; the elements of the crime are those of forgery.

A false entry in a book of the association, or a false entry in a public book, in the manner prescribed by statute, is a forgery, and we think must be done with the intent to defraud; and if that fraud is not pleaded or proven, there is no offense; in other words, there is no forgery.

The statute above says, "With the intent to deceive;" that is, perhaps, almost as broad as would be the expression, "with intent to defraud." If a statute were enacted which set forth the acts which constitute larceny, but did not say that such acts did constitute larceny, but fixed a definite penalty for the offense, the crime would be that of larceny, whether it was denominated that or not; and we think the same reasoning applies to the above statute.

The act of making a false entry upon the books mentioned in the manner prescribed by statute, though the statute does not denominate it forgery, it is forgery, nevertheless, when fully accomplished, and in that case there must be an intent to commit fraud or an intent to deceive. Such an allegation is wholly absent from this information,

46 N. D.—37.

and hence it is absolutely fatally defective, and will not support a judg-ment of conviction.

ROBINSON, J., concurs.

ROBINSON, J. (dissenting). I dissent on the ground that the proof wholly fails to sustain the information. In each count of the informa-tion the charge against the defendant is the making of a false entry in a book of the bank known as the "Daily Statement and Ledger," of date August 23, 1917. The statement relates to certificates of deposit outstanding at the close of the business day on August 23, 1917, show-ing the sum total of deposits $342,090.46. Now it is conceded that the defendant never did make any such entry, but the information avers, and we may allow the proof to show, that he did make two false entries, the first on August 1, 1917, and the second on August 23, 1917, and that by reason of such false entries there was a deficit in the sum total as computed by the clerks and by them entered in the Daily Statement and General Ledger. Now if the defendant did knowingly make two original false entries, he was guilty of two crimes which began and ended with the making of the entries. The bank clerks could not make him guilty of a daily crime or multiply his crimes by making daily errors in the Statement and General Ledger; nor could the clerks by their entry in the ledger consolidate two or more crimes into one crime. For each false entry the defendant was subject to a separate prosecution, and he had a right to a separate trial. Neither the state nor the bank clerks had any right or power to consolidate, change, or vary the orig-inal offenses.

It is true that what a person does by another he does by himself, and that a false entry when made by the direction of an officer of a bank is an entry by the officer just as much as if it were made with his own pen. Such are the holdings of the cases cited in the majority opinion. But in this case there can be no just claim that the alleged false entries in the ledger were made by the direction of the defendant or with in-tent to deceive or injure any person, or that such entries did cause injury to any person. Hence, the judgment should be reversed.