## HAYES v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 17, 1909.)

No. 2,920.

1. BANKS AND BANKING (§ 256*)—"FALSE ENTRY"—LOANS AND DISCOUNTS.

A national bank, of which defendant was cashier, was in straitened circumstances, so that the president, cashier, and· assistant cashier had not drawn their salaries for five months. Each of the officers having overdrawn his individual account with the bank to the amount of their unpaid salaries, the bank examiner required the overdraft to. be made good, and to accomplish this the officers induced F., who was solvent, to execute his note to the bank for their accommodation, and this was discounted and entered as a loan and discount; the proceeds being credited to the officers' individual accounts to make good the overdrafts. *Held*, that the note, while accommodation paper so far as the officers of the bank were concerned, was enforceable against the maker by the bank, and hence its inclusion in a report made by the cashier to the Comptroller of the Currency as a loan and discount of the bank did not constitute the making of a "false entry," in violation of Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497).

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 256.*

For other definitions, see Words and Phrases, vol. 3, pp. 2656, 2657; vol. 8, p. 7660.]

2. CRIMINAL LAW (§ 552*)—CIRCUMSTANTIAL EVIDENCE—WEIGHT.

Circumstantial evidence, to be sufficient to sustain a conviction, must rise to that degree of convincing power which satisfies the mind of guilt beyond a reasonable doubt.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1260, 1261; Dec. Dig. § 552.*]

3. BANKS AND BANKING (§ 256*)—ASSETS—INCREASE—FALSE ENTRIES.

If the officer of a bank procured a note to be given to it by an irresponsible person, with intent of apparently increasing the bank's assets, and should thereafter make an entry in a report required by law to the Comptroller of the Currency, including such note as a bona fide asset of the bank, with either of the intents denounced by Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497), such entry would be a false entry within such section, though the paper was in actual existence.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 256.*]

In Error to the District Court of the United States for the Western District of Oklahoma.

E. G. McAdams (J. H. Grant, on the brief), for plaintiff in error.

Isaac D. Taylor (John Embry, on the brief), for defendant in error.

Before ADAMS, Circuit Judge, and RINER and AMIDON, District Judges.

ADAMS, Circuit Judge. Defendant Hayes was charged in the indictment with having violated the provisions of section 5209, Rev. St. (U: S. Comp. St. 1901, p. 3497), by making a false entry in a report made to the Comptroller of the Currency on November 17, 1904, concerning the condition of the First National Bank of Lexington, Okl., of which he was cashier. The false entry charged to have been made concerned the amount of loans and·discounts of the bank on the 10th

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

day of November, 1904. He was convicted, and brings the case here for review.

Whether or not there was a false entry in fact depends upon whether a cert note made by one Ray Farmer, amounting to $1,125, was properly treated in the report as a loan and discount. The counsel for the government make this concession in their brief:

"The whole case depends upon the evidentiary fact whether the note for $1,125, purporting to have been given by one Ray Farmer, which entered into and contributed to the aggregate of loans and discounts reported and alleged to be false, was a loan or discount of the bank."

The facts are practically undisputed. For some time prior to November 10th the financial condition of the bank had been dubious and uncertain. The president, James, the cashier, Hayes, and the assistant cashier, Ingram, had not drawn their salaries for about five months. The total amount of the unpaid salaries was $1,125. The reason for not drawing them was that the addition of that amount to the expense account would show an impairment of the capital of the bank. Each of those officers, having individual accounts in the bank, had overdrawn the same in the aggregate to the amount of their unpaid salaries, namely, $1,125. Some time before November 10th a bank examiner, on looking over the affairs of the bank, required the overdrafts to be made good. To accomplish this the officers got Mr. Farmer to execute his note to the bank for their accommodation, had it discounted by the bank and entered in the books as a loan and discount like any other note of that character, and had the proceeds credited to their individual accounts, thereby making good their overdrafts.

The evidence discloses that Farmer was induced to make the note, after a full explanation of the condition of the bank, for the purpose of raising a fund to cancel the overdrafts. The note was accommodation paper so far as the officers were concerned. As between them and Farmer, the former were the principal debtors and the latter was the surety only; but, as to the bank, Farmer was the principal, if not the only, debtor, and without any doubt became liable to the bank for the amount of the note, which had been discounted at his request in order to enable his friends to make good their overdrafts and thus conform to the requirements of the bank examiner.

The testimony has all been very carefully examined, and we fail to find anything indicating that this was a sham transaction in any other sense than that it was an accommodation note. There is no substantial evidence tending to show that Farmer was insolvent or unable to respond to the demand of the bank for the payment of the note at any time, or that there was any understanding between him and the officers of the bank that he should not be held on the note if they should be unable to protect him from liability by paying it or taking care of it themselves. It is true there are some declarations proved against the defendant in this case to the effect that Farmer "was not supposed to pay the note," and the bank examiner testified, six months after the note was given, that he asked defendant Hayes about it, and that the latter then said:

"It was no obligation of Ray Farmer; that it was an accommodation note of himself, Mr. Ingram, and Mr. James, but Ray Farmer was not liable."

After reading the testimony, and considering all the declarations of Hayes relied upon to show that the note was not a genuine or real transaction, we have reached the conclusion that, giving full force and effect to all his declarations, they are referable to the accommodation character of the note solely, and, so treating them, they clearly and truthfully express the legal relations between Farmer and the persons for whose accommodation the note was made, namely, that as between them Farmer was not supposed to pay it—that as between them Farmer was not liable. In view of this kind of testimony and of the relation of the parties, we have concluded that there is no substantial testimony in this case which warranted the jury in finding that this was a mere sham transaction, devised for a wrongful purpose, and with the intent that under no circumstances should Farmer be liable to the bank on it.

While evidence, to convict of crime, may be circumstantial and inferential in its character, it must always rise to that degree of convincing power which satisfies the mind beyond a reasonable doubt of guilt. This can never be the case when the evidence as produced is entirely consistent with innocence in a given transaction. We are of opinion that all the evidence relied on to show that there was an understanding that the Farmer note should be treated differently from any other accommodation paper held by any bank among its assets, when taken in connection with the admitted facts of this case, is entirely consistent with an innocent regarding of the paper in November, 1904, as a proper and lawful item of loans and discounts.

It may be conceded that if the officers of the bank procure a note to be given to the bank by an irresponsible person, with the intent of apparently, but not really, magnifying the bank's assets, and should thereafter make an entry in a report required by law to be made to the Comptroller of the Currency, including such note as a bona fide asset of the bank, with either of the intents denounced by section 5209, such an entry, even though of a paper in actual existence would be a false entry, within the meaning of section 5209. This, we think, would not contravene the doctrine of Coffin v. United States, 156 U. S. 432, 15 Sup. Ct. 394, 39 L. Ed. 481, and other like cases. But such concession does not help the government in this case. There was no substantial testimony tending to show that the note here involved as the subject of the false entry was any such sham affair as stated in the concession just made.

Believing that there was no case against the defendant on the merits, and that the court erred in not giving the instruction for a peremptory verdict of not guilty as requested by his counsel, we refrain from considering the legality of the constitution of the grand jury which indicted the defendant, and other questions of a dilatory or technical character, which were exhaustively argued by counsel.

The judgment of the District Court is reversed, with directions to grant a new trial.