## COOPER v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. April 13, 1926.)

No. 2368.

1. **Banks and banking** ☞257(4)—**Instruction in prosecution for misapplying national bank funds authorizing verdict of guilty, if defendant authorized discount of accommodation note, held erroneous (Rev. St. § 5209, as amended by Act Sept. 26, 1918 [Comp. St. Ann. Supp. 1919, § 9772]).**

In prosecution under Rev. St. § 5209, as amended by Act Sept. 26, 1918 (Comp. St. Ann. Supp. 1919, § 9772), for misapplication of funds of national bank, instruction that, if defendant, as officer of bank, authorized discount of accommodation note, proceeds of which were placed to credit of defendant's brother, a former officer indebted to bank, jury would be justified in finding defendant guilty, in view of his clear understanding of transaction, held erroneous.

2. **Banks and banking** ☞257(3)—**To convict for misapplying national bank funds, evidence must show actual conversion of money with intent to injure or defraud bank or deceive persons named in statute applying thereto (Rev. St. § 5209, as amended by Act Sept. 26, 1918 [Comp. St. Ann. Supp. 1919, § 9772]).**

In order to convict for misapplication of national bank funds under Rev. St. § 5209 (Comp. St. § 9772), evidence must show actual conversion of money with intent to injure or defraud bank or deceive one of persons named in statute.

3. **Banks and banking** ☞256(3)—**Bank funds not misapplied by discounting note, if proceeds used to discharge other equally unsecured indebtedness (Rev. St. § 5209, as amended by Act Sept. 26, 1918 [Comp. St. Ann. Supp. 1919, § 9772]).**

Rev. St. § 5209, as amended by Act Sept. 26, 1918 (Comp. St. Ann. Supp. 1919, § 9772), as to misapplying national bank funds was not violated by discounting note having irresponsible accommodation indorser, if proceeds were used to discharge other equally unsecured indebtedness, leaving bank in no worse position.

4. **Banks and banking** ☞257(4)—**Charge, in prosecution for making false entries in national bank books, that entering proceeds of accommodation note constituted false entries, held erroneous, where entries were made as transaction actually occurred (Rev. St. § 5209, as amended by Act Sept. 26, 1918 [Comp. St. Ann. Supp. 1919, § 9772]).**

In prosecution under Rev. St. § 5209, as amended by Act Sept. 26, 1918 (Comp. St. Ann. Supp. 1919, § 9772), for making false entries in national bank books, instruction that discounting accommodation note made by insolvent and placing proceeds to credit of former officer of bank heavily indebted thereto constituted false entry, held erroneous, where entries were made as they actually occurred in transaction.

In Error to the District Court of the United States for the Eastern District of North Carolina, at Wilmington; John C. Rose, Judge.

William B. Cooper and another were convicted of misapplying funds and making false entries in the books of a national bank, in violation of Rev. St. § 5209, and defendant named brings error. Reversed, and remanded for new trial.

Before WADDILL, Circuit Judge, and WATKINS and GRONER, District Judges.

R. C. Lawrence, of Lumberton, N. C., and Charles A. Douglas, of Washington, D. C., for plaintiff in error.

Irvin B. Tucker, U. S. Atty., of Whiteville, N. C.

GRONER, District Judge. William B. Cooper and his brother, Thomas E. Cooper, were jointly indicted for misapplying the funds of, and making false entries in the books of, the Commercial National Bank of Wilmington, N. C., in violation of section 5209, R. S., as amended by Act Sept. 26, 1918 (Comp. St. Ann. Supp. 1919, § 9772). The trial resulted in a verdict of guilty as to both defendants. William B. Cooper alone appealed.

The Commercial National Bank was the successor of the American Bank & Trust Company, a state bank organized under the laws of North Carolina. Thomas E. Cooper had been president of the state bank for several years. He decided to remove from Wilmington to Raleigh, N. C., to accept the presidency of a bank at that place, and, upon his resignation as president, he was succeeded by his brother, William B. Cooper. Shortly after his election as president, William B. Cooper, who will be hereinafter spoken of as defendant, ascertained as the result of several examinations of the bank that its condition was far from satisfactory, and presumably concluded that the best chance at rehabilitation lay in converting it into a national bank. This was accomplished on April 19, 1922, and about June 1st of the same year defendant sold his interest in the bank, resigned as president, and his place was filled by the election of his brother, Thomas E. Cooper, who returned from Raleigh and continued as such until December 30, 1922, when the bank was closed by order of the Comptroller and a receiver appointed to liquidate its affairs.

The indictment upon which the defendant and his brother, Thomas E. Cooper, were brought to trial originally contained thirteen counts. At the trial, before the case went to the jury, all counts in the indictment were nolle prossed except counts 1, 2, 3, and 7. The first three of these counts arose out of a single transaction, to wit, the discounting on April 27, 1922, of a note of E. L. Sanderson, indorsed by Thomas E. Cooper, for $13,500, and the entry of that amount on the books of the bank as a credit to Thomas E. Cooper. The seventh and last count submitted to the jury arose out of the discounting on July 6, 1922, of a note of E. E. Smith for $13,000, which, together with $500 in cash, was used to

13 F.(2d)—2

take up the Sanderson note. Misapplication is charged in the first count because of the discount of the note. The false entries charged in the second and third counts are: The entry of the proceeds of the note as a deposit to Thomas E. Cooper, in the one case, when as a matter of fact Cooper had made no deposit; and the entry of the note as a loan to E. L. Sanderson in the other, when as a matter of fact Sanderson was only an accommodation maker and the loan was really to Thomas E. Cooper. The false entry in the seventh count was the making of an entry on the books of the bank showing the discount of a note for the account of E. E. Smith, when in fact the relations of Smith and Cooper were the same as in the case of Sanderson and Cooper as charged in count 3.

In March, 1922, and while the defendant was president of the bank, Thomas E. Cooper, who was then indebted to the bank in a very considerable sum of money, obtained from one E. L. Sanderson his accommodation note for $13,500, which he (Cooper) sent to the bank with a personal guaranty of payment and asked to have discounted and placed to his credit. Sanderson, at the time he made the note, was cashier of a small North Carolina bank, and admittedly without financial responsibility. The cashier of the bank, one Bethea, discussed with defendant on several occasions the desirability of discounting the note, and the conclusion arrived at was that the note should not be discounted, and this conclusion was communicated to Thomas E. Cooper by letter from defendant, dated April 1st, as follows:

"Dear Tom: I am enclosing note signed by E. L. Sanderson $13,500 maturing January 15, 1923, for the reason that after fully considering this matter Mr. Bethea and myself are of the opinion that since we both know that Sanderson's signature is merely as a friend to you and since Sanderson could prove that in case of your death, even by Bethea or myself, that it would be a dangerous proposition to accept the note and on reflection I believe you will agree with us," etc.

Notwithstanding the refusal to discount the note, Thomas E. Cooper persevered in his efforts to have the matter reconsidered, and finally, on April 27th, the note indorsed by him was discounted and the proceeds, amounting to $12,905.55, placed to his credit on the books of the bank. The question whether the defendant authorized the discount of the note or whether it was done by the cashier, without his knowledge or consent, is a matter which defendant claims should

have been submitted to the jury more fully than was done in the charge of the court to the jury. In view of what we will have to say hereafter, we do not regard it as necessary to discuss this assignment further than to say we think it is without merit.

In his charge to the jury, the learned judge presiding in the trial court told the jury, if they believed beyond a reasonable doubt "that the defendant W. B. Cooper did authorize the discount of this (Sanderson) note, you would be fully justified, in view of his clear understanding of the transaction expressed in his letter of April 1st (just hereinbefore quoted) in finding him guilty on the first, second, and third counts."

The issue which the jury were thus called on to decide was, as to the first three counts, narrowed to the single question whether the discount of the Sanderson note was authorized by defendant, and they were explicitly told that, if their answer to this query were in the affirmative, they should find him guilty. In thus limiting the issue, the court below doubtless proceeded upon the assumption that, because Sanderson was an accommodation maker and was not financially able to pay the note when it should mature, its discount by defendant as an officer of the bank would be a misappropriation of the funds of the bank, and also that the entry of the transaction upon the books of the bank—notwithstanding such entry accurately and exactly reflected the facts—would, for the same reason, be a false entry. Although nothing was said on this subject, explanatory of the views of the court, in that portion of the charge relating particularly to defendant, in the portion relating to his codefendant the jury were told that, if the evidence justified the conclusion that Sanderson was an accommodation maker of the note and did not expect to, and was not able to, pay it, and defendant knew this, the transaction was unlawful, even though the proceeds of the note were used to pay other debts of Thomas E. Cooper to the bank.

[1] The positive instruction that in discounting the note and crediting the proceeds to the account of Cooper there was thereby a violation of the statute—either because the maker of the note was insolvent, or because he made it for the accommodation of the borrower—is, we think, contrary to the construction placed upon the statute by the Supreme Court in United States v. Britton, 107 U. S. 655, 2 S. Ct. 512, 27 L. Ed. 520. The statute (section 5209, R. S., as amended by act Sept. 26, 1918 [Comp. St. Ann. Supp. 1919, § 9772]) is as follows:

"Any officer, director, agent, or employee of any federal reserve bank, or of any member bank * * * who embezzles, abstracts, or willfully misapplies any of the moneys, funds, or credits of such federal reserve bank or member bank, * * * or who makes any false entry in any book, report, or statement of such federal reserve bank or member bank, with intent in any case to injure or defraud such federal reserve bank or member bank, or any other company, body politic or corporate, or any individual person, or to deceive any officer of such federal reserve bank or member bank, or the Comptroller of the Currency, or any agent or examiner appointed to examine the affairs of such federal reserve bank or member bank or the Federal Reserve Board; * * * shall be deemed guilty of a misdemeanor," etc.

[2] The April 1st letter, which the court below made the test of guilt or innocence, viewed most strongly against defendant, contained no other admission than knowledge on the part of defendant that Sanderson was, quoad the note in question, an accommodation maker. It does not show, although admittedly it was true, that defendant knew that Sanderson was insolvent, in the sense that he was not then able to pay the note, nor does it show that defendant knew or had any reason to believe that Thomas E. Cooper, as guarantor and indorser of the note, was not at all times solvent and able to pay it; but, conceding that he did, and conceding, likewise, that it was bad banking, and that the purpose of Thomas E. Cooper in securing the discount of the note was to lessen his direct liability to the bank and thereby deceive the bank examiner, still we think that to bring the case within the terms of the statute as to misapplication the bank must have sustained some financial loss; in other words, that the substitution of one worthless note for another is not an offense condemned by the statute. In our opinion, in order to convict under the first count, the evidence must have shown that there had been an actual conversion of money with intent to injure or defraud the bank or deceive one of the persons named in the statute. See United States v. Britton, supra; United States v. Northway, 120 U. S. 327, 7 S. Ct. 580, 30 L. Ed. 664; Dow v. United States, 82 F. 904, 27 C. C. A. 140; Adler v. United States, 182 F. 464, 104 C. C. A. 608.

[3] We think, therefore, that the trial court was in error in charging the jury that it was of no consequence whether the money was actually withdrawn from the bank or whether it was paid in discharge of other indebtedness, and we also think the question of whether it

or any part of it was withdrawn to the hurt of the bank should have been submitted to the jury. There was a conflict of evidence on this subject, and we are not able to say which of the two opposing views the jury might have taken. If upon the whole evidence they were satisfied that the entire proceeds of the Sanderson loan were used in discharge of other equally unsecured indebtedness of Thomas E. Cooper, for whose account it was discounted, and that none of the money was withdrawn from the bank, and that after the entire transaction was completed the bank was in no worse position than it was before and had the same money and the same evidences of indebtedness, except in different form, we think the statute was not violated as charged in the first count of the indictment.

The second, third, and seventh counts of the indictment, under which defendant was likewise convicted, related, as has been already stated, to practically the same transaction. The learned trial judge, in his charge to the jury, so treated them and charged the jury that, if they believed that defendant discounted the Sanderson note they should find him guilty under counts 2 and 3, and if he authorized the Smith loan, "knowing its nature and with intent that entries such as were made, or something similar to them, should be made in the course of the regular work of the bank," they should convict him on the seventh count. [4] The false entries charged to have been made in counts 2 and 3 were exact entries of what in fact occurred; that is to say, that on April 27th a note of Sanderson in the amount of $13,500 was discounted on the security or indorsement of Thomas E. Cooper, and the proceeds thereof deposited to the account of Cooper. The trial court was of opinion that this was a violation of the statute, and in effect told the jury that, if Thomas E. Cooper caused the Sanderson note to be discounted and knew the facts to be as William B. Cooper had stated them in his letter of April 1st—that is to say, that it was an accommodation note made by an insolvent —the entry of such a note on the books of the bank as a debt due by the maker and the crediting of the proceeds to Thomas E. Cooper constituted a false entry as charged in the two counts. And the court further charged that, if the purpose in putting the notes in the bank was to make it appear that the direct liability of Thomas E. Cooper was less than it was in fact, this was sufficient to show an intent to deceive the examiner and other officers mentioned in the statute.

We are constrained to believe, as was said by the Supreme Court in Coffin v. United States, 156 U. S. 432–463, 15 S. Ct. 394, 406 (39 L. Ed. 481), that:

"The language used must have tended to confuse the jury and leave upon their minds the impression that if the transaction represented by the entry actually occurred, but amounted to a misapplication, then its entry exactly as it occurred constituted 'a false entry'; in other words, that an entry would be false, though it faithfully described an actual occurrence, unless the transaction which it represented involved full and fair value for the bank. The thought thus conveyed implied that the truthful entry of a fraudulent transaction constitutes a false entry within the meaning of the statute. We think it is clear that the making of a false entry is a concrete offense which is not committed where the transaction entered actually took place, and is entered exactly as it occurred."

See, also, Twining v. United States, 141 F. 41, 72 C. C. A. 529; United States v. Young (D. C.) 128 F. 111; Dow v. United States, 82 F. 910, 27 C. C. A. 140; Hayes v. United States, 169 F. 101, 94 C. C. A. 449.

Inasmuch as, admittedly, the entries made truthfully represented the facts as they actually took place, it follows that the charge of the court in the respects mentioned was error, for which a new trial must be granted. The judgment of the lower court will therefore be reversed, and the case remanded for a new trial, to be had in accordance with this opinion.

Reversed.