# CRENSHAW v. UNITED STATES.

## No. 8253.

Circuit Court of Appeals, Sixth Circuit.

Nov. 13, 1940.

L. E. Gwinn, of Memphis, Tenn., and Chas. C. Grassham, of Paducah, Ky., for appellant.

R. G. Draper, of Memphis, Tenn. (Wm. McClanahan, R. G. Draper, and C. P. J. Mooney, all of Memphis, Tenn., on the brief), for appellee.

Before HICKS, ALLEN, and ARANT, Circuit Judges.

HICKS, Circuit Judge.

Appellant, Crenshaw, was for a number of years before his resignation in April, 1937, President of the Farmers and Merchants Bank of Newbern, Tennessee. He was convicted upon Counts IV and V of an indictment charging him with violations of the National Banking laws, and was sentenced under each count to pay a fine of $1,000 and to imprisonment for five years, the terms of imprisonment to run concurrently.

Counts IV and V each charged a violation of § 592, Title 12 U.S.C.A., 12 U.S.C.A.

Appellant complains,—(1) of the denial of a directed verdict; (2) of the failure to grant a new trial because of coercion of a juryman; (3) of the admission of evidence of collateral transactions; (4) of the refusal to grant a mistrial because of improper questioning by counsel; and (5) of a ruling that a passbook entry created a relationship of debtor and creditor between bank and customer.

§ 592 reads in part as follows: "Any officer * * * of any insured bank as defined in subsection (c) of section 264 of this title * * * who makes any false entry in any book, report, or statement of such * * * insured bank, with intent in any case to injure or defraud such * * * insured bank * * * or to deceive any officer of such * * * insured bank * * * or the Federal Deposit Insurance Corporation, or any agent or examiner appointed to examine the affairs of such * * * insured bank * * * shall be deemed guilty of a misdemeanor, and upon conviction thereof in any district court of the United States shall be fined not more than $5,000 or shall be imprisoned for not more than five years, or both, in the discretion of the court."

Count IV charged that defendant's answer of "No" made on April 6, 1937, to Question 8 on page 12 of the Report of Examination of the bank made to the Federal Deposit Insurance Corporation by its Examiner, constituted a false entry made with intent to deceive the officers of the F. D. I. C. and its agents and examiners. The question was, "Have there been any instances since date of last examination where loans, advances or other extensions of credit have been renewed or their due dates extended without the collection of interest thereon? If so, furnish detailed list." And the count charged that defendant well knew that said statement was false since there had been numerous instances known to him wherein loans and advances and other extensions of credit had been renewed and their due dates extended without the collection of interest thereon.

Count V charged defendant with making false entries in the "Individual Ledger" of the bank on January 6, 1937, in the account of Mrs. J. W. Hicks, the entry being for $62.77, whereas, in truth and in fact, defendant well knew the indebtedness and liability of the bank on that date was a different and much larger amount; and that the aforesaid entry was made with intent to injure and defraud the insured bank and to deceive its officers, directors and auditors and the agents and examiners of the F. D. I. C.

It was stipulated that the bank was an insured bank as defined in subsection (e) of § 264, Title 12 U.S.C., 12 U.S.C.A. § 264; that its deposits were insured by the F. D. I. C. under a certificate issued August 23, 1935, and, that the bank together with its employees was within and subject to the provisions of the banks and banking laws of the United States applicable to insured banks and particularly to § 592, Title 12 U.S.C., 12 U.S.C.A. § 592.

There was evidence tending to show that appellant had been president and chief executive officer of the bank for a number of years, and except in routine matters was in complete management of the bank; that a little more than three months after his resignation, on July 16, 1937, the bank closed its doors; that shortages of $8,401 were found but that appellant made restoration of approximately $2,300 which reduced the claim against the bonding company upon a blanket surety bond to approximately $6,000. Of this net shortage $694.76 was attributed to appellant and $5,292.51 to irregularities of other officers.

### Count IV

The Government filed as Exhibit 17 a photostatic copy of page 12 of the Report to the F. D. I. C. Attached thereto was a certificate signed by E. F. Downey, Acting Secretary to the Board of Directors of the Federal Deposit Insurance Corporation,

that the "attached photostat copy is a true and correct copy of the 'Statement of Bank Officer' contained in the original report of examination of the Farmers and Merchants Bank, Newbern, Tennessee, made as of April 5, 1937. * * *"

."Page 12" was a printed form, bearing twenty-two questions, the answers to which were filled in by typewriter. Question 8 and the answer were as hereinabove indicated. At the top of the sheet, to the left, appeared the words, "Form 56 Revised 1-3-37" and at the right, "FDIC Certificate Number 1710." In the center in heavy capitals appeared the words, "Statement of Bank Officer," and at the bottom, following the questions and answers appeared the following printed certification with blanks filled in and signed as indicated,

"I, J. B. Crenshaw, Pres.,
_____
Name of Officer        Title
of the Farmers and Merchants Bank New-
_____
          Name of bank
bern Tenn do hereby certify that the fore-
going statements are true and correct to the best of my knowledge and belief.

"(Signed) J. B. Crenshaw
_____
          "Pres."

Beneath the signature and at the right were printed the words, "Statement of Bank Officer."

The Government also filed, as Exhibit 16, the "Statement of the Bank Officer" made on 9/5/36 the date of the last previous examination by the F. D. I. C. in order to show the length of the period covered by appellant's answer in Exhibit 17.

J. A. Parnell, who examined the bank for the F. D. I. C. in April, 1937, testified that the statements represented by Exhibits 16 and 17 were a part of the examination routine, and were requested of the senior officer of the bank to assist in appraising its assets; that the information asked is of an important character; that if the answer to Question 8 had been "Yes," he would have gotten a detailed list of the loans extended without interest payment and would have checked to see why the loan had been thus extended. He testified further: "Failure to pay interest would indicate that the borrower was in financial difficulties and the asset would be investigated thoroughly to determine whether it was a good loan or not, and if found to be unsound I would ask the bank to charge it off * * * the bank would not be permitted to carry it regardless of the size

of the loan. * * * Notes on which interest has not been paid would be subject to a closer scrutiny than notes on which the interest had been paid. I accepted that report as true. * * *"

■ Exhibit 17 was so obviously a statement of the bank, even though denoted a "Statement of Bank Officer" that appellant's effort to distinguish a statement of bank officer from a statement of a bank as defined in § 592 is unavailing. The statement was obtained by the F. D. I. C. examiner in the course of his examination of the bank. To have had any validity it must necessarily have been signed by a bank officer or employee. Page 12 is clearly a report of the bank within the intendment of § 592.

Appellant filed a motion for a bill of particulars as to Count IV and the Government designated six notes, which it alleged had been extended without the collection of interest and contrary to the answer to Question 8, that there were none. These six notes were by stipulation treated as incorporated into Count IV and were introduced by A. E. Leonard, who testified that in an investigation conducted by him as an agent of the Federal Bureau of Investigation he found several notes upon which interest was recorded paid by endorsement on the back, but that he could find no evidence of such payment upon the books of the bank.

These notes, each payable to the bank, were introduced physically or by photostatic copy. The first was made by C. C. Hall, dated 3-15-36, amount $87.60; then one by Earl Gelzer dated 1-9-33, amount $1,090; two by Herbert Johnson, each for $50, one dated 10-19-35 and the other 4-22-36; one by Wm. R. Wheatley dated 12-21-36, amount $15.35; and the last by T. L. Spence, dated 12-15-36, amount $281.83. On the reverse of each of these six notes, interest was recorded paid, either by filling in the blanks by pen or pencil of a stamped notation, "Interest paid to . . . on . . .," or by notations made entirely in longhand as on the Gelzer note, whereon the statements were simply that interest had been paid to a certain date. Each note thus indicated a payment of interest some time late in 1936, or early in 1937, during or just preceding the period covered by Exhibit 17.

Mr. Leonard further testified: "I discussed in a general way with Mr. Crenshaw the matters about which I have testi-

fied in regard to the fourth count of the indictment. I didn't discuss each particular note. 'I told him when I talked to him that I had found several instances where interest was recorded on the back of the note as being paid on certain dates, but was not recorded on the journal as being paid on those dates, and he told me *whenever it was recorded as being paid on the back of the notes that it was in fact paid*. He told me that he ·handled· the notes' * * *." (Italics ours.)

The Gelzer note was made in the course of an involved transaction covering several years. Gelzer testified that in 1928 he made a series of twenty notes to Crenshaw for $91.60 each secured by his farm and payable twice a year; that he kept up the payments for two or three years and that on January 6, 1933, he signed the $1,090 note (in evidence and payable to the bank) to take care of the first notes. He testi-·fied that the $1,090 note was likewise secured by his farm but that he made no payments of any kind upon it. There is a credit of $400 upon it dated 9-1-34 which evidently represents the net·proceeds of a loan negotiated for Gelzer by Crenshaw at a Federal Land Bank. The note is also credited with five interest payments, to 1-5-35; to 10-9-35; to 12-9-35; to 7-15-36; and to 4-15-37 respectively. There is substantial evidence that these payments of interest were not made. The principal credit and the five interest credits were made in pencil and were evidently made at the same time.

Appellant objected to evidence touching the Gelzer note upon the·ground that the entries thereon indicated that they were not made between September 19, 1936, and May, 1937, the dates of the last two F. D. I. C. examinations. But where, as here, intent is material, similar acts may be shown if they are sufficiently near in point of time and relate in such a way as to throw light upon the question of intent. Prettyman v. United States, 6 Cir., 180 F. 30, 36; Johnson v. United States, 6 Cir., 82 F.2d 500, 504; Wilson v. United States, 6 Cir., 109 F.2d 895, 896. If the entries of interest payments on the Gelzer note were made consecutively, the last entry must have been made within two months of the period covered by the examination of April 6, 1937, and was not too·remote.

There were some irregular aspects touching·the Johnson notes. Johnson testified that the bank had a farm and Cren-

shaw offered him $100 to sell it; that he sold the farm but before the deed was executed he needed his money and Crenshaw let him have half of it upon the execution of a note; that this was done on October 15, 1935; that six months later he executed a second note under the same circumstances; that Crenshaw told him that the money (for the farm) would be in in a few days and he would destroy the notes; that he never paid any interest on the notes and never heard of them until Crenshaw had resigned and the bank had become insolvent.

▌ Such is the gist of the Government's evidence bearing upon Count IV. We think it is sufficient to support the verdict upon that count. Guilt under the stat-·ute depends upon the existence of an intent to deceive and an inference of such an intent naturally arises from appellant's deliberate act in answering question 8 in the negative. House v. United States, 6 Cir., 78 F.2d 296.

The inference is supported by the fact that there were several of these notes, all with recent notations of interest and on one of which, at least, there was no possibility of interest ever having been paid.

### Count V

▌ This count was based upon the fact that on August 20, 1935, appellant entered a deposit of $300 upon the passbook of Mrs. J. W. Hicks but failed to enter the amount upon the individual ledger in the books of the bank. As a result, on January 11, 1937, when her passbook was balanced it showed in his handwriting a balance of $362.77; whereas the individual ledger showed on January 6, 1937, a balance of $62.77. The court charged that this entry of $62.77 was a false entry made with intent to deceive. We need not discuss the evidence bearing upon Count V at any great length. The entry of $62.77 was not false; it was the exact truth. This was all the money Mrs. Hicks had on deposit on the date of the entry and appellant was entitled to a directed verdict on this count.

Appellant's wrongful conduct consisted in entering a deposit of $300 upon the passbook without making an actual deposit of the money in the bank but this falls far short of evidence that the entry upon the individual ledger was false.

Appellant complains of the denial of his motion for a new trial, one ground of

which was that one of the jurymen had been coerced into returning the verdict. Juror Ellis made an affidavit in substance that all of the jurors except himself had agreed to a verdict of guilty on two counts; that he lost his temper and said he would never agree to such a verdict; that juror Thompson then made a motion that affiant be brought before the Judge; that the motion was not put because juror Boyer objected upon the ground that affiant had a right to his opinion; that affiant then retired to an adjoining room to read the indictment and consider the case further, when juror Rhea came into the room and advised affiant to agree to the verdict, for if he was carried before the Judge he would be fined and that he thereupon without further consideration did agree to the verdict as rendered.

 Such affidavits must be received with great caution. United States v. Reid, 12 How. 361, 366, 13 L.Ed. 1023. Following the filing of the affidavit, the court conducted an investigation in which every juryman was questioned as to what took place in the jury room. The evidence indicates that affiant had already voted guilty upon Count IV before the Thompson motion was made; that this motion was simply to report that the jury was deadlocked and to indicate who was responsible; that it is doubtful if the motion had a second; that juror Boyer immediately stressed the fact that each juryman was entitled to his opinion; that the motion was never voted upon; that juror Ellis retired to the adjoining room with the indictment; that juror Rhea refused to discuss the matter with him; that there was no coercion or threat of a fine; that in polling the jury the foreman emphasized the fact that every juryman must make his decision of his own free will; that he expressly made it clear to Ellis that he could hang the jury and that when the poll was taken Ellis voted with the others.

The denial of a motion for a new trial is not reviewable except for an error of law or a clear abuse of discretion. National Surety Co. v. Jean, 6 Cir., 61 F.2d 197. In view of the testimony just reviewed we cannot say that the court abused its discretion in denying the motion.

Appellant contends that he was prejudiced by the testimony of an auditor which tended to show that he withdrew funds from the bank and charged them to the account of the estate of a Mrs. Fuller without authority. Appellant's point is that this testimony was not relevant to any charge in the indictment; but Counts I and II charge that appellant embezzled, converted and appropriated to his own use funds of the bank and the testimony complained of was at least relevant upon the question of intent. Moreover, no harm resulted from the admission of this testimony because appellant was acquitted upon Counts I and II.

It was assigned as error that the district attorney asked the auditor if he had ascertained from the beneficiaries of the Fuller estate whether they had knowledge of appellant's withdrawal of its funds but we think the question was not in itself prejudicial because upon appellant's objection thereto the court declined to allow the witness to answer it. The result is that the judgment upon Count IV is affirmed and that upon Count V is reversed and the case remanded for a new trial upon that count.