381 P.2d 764

**STATE of Arizona, Appellee,**

**v.**

**James R. HERON and Chuck O. Lee, Appellants.**

**No. 1272.**

Supreme Court of Arizona.

En Banc.

May 15, 1963.

William C. Fields, Phoenix, for appellant James R. Heron.

Stockton & Hing, by Robert O. Hing, Phoenix, for appellant Chuck O. Lee.

Robert W. Pickrell, Atty. Gen., William E. Craig, Asst. Atty. Gen., and Charles N. Ronan, Maricopa County Atty., for appellee.

LAURANCE T. WREN, Superior Court Judge.

The defendants, James R. Heron and Chuck O. Lee, were convicted on five counts of a twenty-three count felony indictment. Judgment of guilty was thereupon entered on each of the five counts and the defendants appealed.

Count VII of the indictment charged the defendants with conspiring with one Carl Payne to violate A.R.S. § 6–232 by filing false reports with the Superintendent of Banks. Count VIII charged the conspiracy of making false entries in the books of the Arizona Savings and Loan Association. The remaining counts, IX, X, and XI, charged violations of A.R.S. § 10–193(A) 2, by making false entries in the books of the Arizona Savings and Loan Association, in that the records showed certain deposits as having been made which allegedly were not made. The overt acts charged in count VIII were the commission of the "false entry" crimes alleged in counts IX, X, and XI.

The facts pertinent to the appeal here presented are as follows: The Arizona Savings and Loan Association was organized under the laws of the State of Arizona. The defendant Heron was president, director, and majority stockholder of the Association. Defendant Lee was employed as secretary and director. All financial reports submitted to the State Banking Department

were prepared by one Carl Payne, who was named in count VII as a co-conspirator, but not as a defendant. The financial report of the Association showing its financial condition as of December 31, 1956, was verified by the defendant Lee as secretary and filed with the Superintendent of Banks on January 24, 1957. A report showing the financial structure of the Association as of December 31, 1957, was likewise prepared by Payne and filed January 21, 1958. These financial statements were compiled from data contained in separate reports submitted periodically by each branch of the Association. Witnesses exercising supervision or control over entries in the books of the Association all testified that these entries accurately reflected the business transactions as they occurred from day to day.

A summary of an auditor's report was introduced by the State to show that in December of 1956, and in December of 1957, substantial sums of money were deposited with the Association by Heron and the various companies he controlled. After the books were closed on December 31st of each of these years, large sums were immediately withdrawn. Previous years had also seen a similar practice. The auditor's report also contained an analysis of the activities in certain accounts for the months of December 1956, January 1957, December 1957, and January 1958. Many of the checks involved were signed by Chuck O.

Lee, the other defendant. The entire record reflects full justification for the jury having found as a fact that defendant Lee was acting in concert with defendant Heron at the time the entries charged as false were made.

Defendants, in separate briefs, have assigned as error the refusal of the trial court to (1) grant their motions for a directed verdict on counts VII, VIII, IX, X, and XI of the indictment, (2) give instructions directing acquittal on all five counts, and (3) grant defendants' motion in arrest of judgment. The following propositions are asserted in support of the claimed error: (a) There was no evidence of any agreement to commit a crime, as alleged in the conspiracy counts, VII and VIII; (b) The alleged false entries, as charged in counts VIII, IX, X, and XI were in fact true, and were correct recordations of transactions as they actually occurred; (c) The alleged false reports as charged in count VII of the indictment were in fact true and correct, as the evidence establishes; (d) Counts VII, VIII, IX, X, and XI of the indictment were based on statutory provisions having no application to savings and loan associations.

As the conspiracy counts, VII and VIII, directly relate to the "false entry" charges set forth in counts IX, X, and XI, we will first consider the assignments of error as to the latter counts.

Count IX of the indictment charges the defendants with making false entries, in that they did

"* * * with intent to defraud, falsify, or cause to be falsified, the books, papers or writings belonging to Arizona Savings and Loan Association, in that they did make, or cause to be made, or concurred in making a false entry in the books, accounts, records or other documents kept by Arizona Savings and Loan Association, in that the Defendants, on December 27, 1956, did cause to be made in the Savings Share Account Ledger Card No. S–2, a record of the Arizona Savings and Loan Association, Scottsdale Branch, an entry reflecting that $24,000.00 had been deposited in said savings account in the name of 'James R. Heron, Globe, Arizona' when in truth and in fact said $24,000.00 was never deposited in said account, nor was it ever intended that the $24,000.00 be deposited in said account, all in violation of A.R.S. 10–193(A) (2)."

Section 10–193(A) 2, provides:

"A. It is unlawful for a director, officer or agent of a corporation or association to * * * (2) Defraud, destroy, alter, mutilate or falsify any books, papers, writings or securities belonging to such corporation or association, or make, or concur in making, any false entries or omit or concur in omitting to make any material entry, in a book of accounts or other record or document kept by the corporation or association, with intent to defraud."

Count X charged similar falsification on the same date of a deposit of $23,000.00 on a ledger card of the North Central branch of Arizona Savings and Loan Association. Count XI charged a false deposit of $21,000.00 on December 28, 1956 represented by a check drawn by J. R. Heron Investment Company and marked as a deposit in that amount on a ledger card of the Mesa branch of the Association.

As to count IX, the evidence established that a $24,000.00 check dated December 28, 1956, drawn by James R. Heron and payable to Arizona Savings and Loan Association, was received by the Association, Scottsdale branch, deposited by it, and honored by the drawee bank. Thereafter, a check dated January 2, 1957, showing the withdrawal of the sum of $24,000.00 was issued by the Association to James R. Heron, defendant herein. The entry reflecting the deposit was timely and accurately made on a savings share account ledger card of the Association.

As to count X, a $23,000.00 check dated December 28, 1956, from James R. Heron to Arizona Savings and Loan Association was received and deposited by the North Central branch of the Association and honored by the drawee bank. Subsequently, a check dated January 2, 1957, from

Arizona Savings and Loan Association to James R. Heron showing the withdrawal of the $23,000.00, was issued by the Association. Again, the depository transaction was accurately recorded.

Also, with reference to the charge of falsely entering a deposit of $21,000.00 from the J. R. Heron Investment Company, as stated in count XI, we find the evidence to be that a check drawn for this amount was likewise received, deposited, honored, and duly recorded in the ledger, this time by the Mesa branch. As with the other two counts charging false entries, a check for $21,000.00 dated January 2, 1957, to J. R. Heron Investment Company, showing to be the withdrawal of $21,000.00, was issued by Arizona Savings and Loan Association. In the latter instance, however, the $21,000.00 check of J. R. Heron Investment Company was accompanied by a memorandum dated December 26, 1956, in which defendant Lee directed the manager of the Mesa branch to deposit and record the check on Friday, December 28th. The memorandum further directed that a bank deposit of Friday's receipts, including the $21,000.00, be made on Monday, December 31st. Defendant Lee also enclosed with the check a repurchase slip for withdrawal of $21,000.00 from the savings account. Compliance with the withdrawal slip was directed in the memorandum as follows: "Please send the check in the enclosed envelope in Fri-

day's mail so that it gets to Globe by Monday or Wednesday at the latest! This check is to be dated January 2, and of course will not be deposited until the 2nd."

The heart of the defendants' appeal is their contention that an entry which timely and correctly records an actual business transaction is not a false entry within A. R.S. § 10–193(A) 2, even though the transaction itself may have been fraudulent. They assert that there can be no violation of this statute unless the entry *itself* is false.

The gravemen of these charges in the indictment, stripped of its legal phraseology, begs this simple question when applied to the facts of this case: Does the truthful entry of a fraudulent transaction constitute a false entry within the meaning of the statute? Logic as well as the authorities requires that this question be answered in the negative.

The indictment charged that the deposit entry on each of the ledger cards was false because

"* * * in truth and in fact said [sum] was never deposited * * *"

Contrary to the quoted allegation, the evidence is clear and the State concedes, that such deposits were in fact made and properly recorded. The cancelled checks and ledger cards proving such were introduced into evidence. Books of account of a savings and loan association are kept for

the purpose of accurately and truly recording its financial transactions. An entry upon the books of some alleged transaction which never occurred, or of a transaction which did occur but which is falsely recorded, would be a false entry. But an entry of that which has actually been done by its officers or agents is not a false entry. The requisite of fraudulent intent required by statute and the indictment, is for the purpose of avoiding prosecution for honest error. Not to have made the entries in question would have been to commit the crime charged, since it was the duty of all concerned to see that the records spoke the exact truth. A recital on the books which speaks the truth cannot be a false entry. If the entries were not false, it is hardly necessary to point out that the making of these entries with intent to deceive or defraud would not constitute an offense within the meaning of § 10–193(A) 2.

The State, however, argues that a true and correct entry made with fraudulent intent constitutes a *false* entry in violation of the statute. The entries recording the deposits were therefore false, because the evidence is clear that the defendants intended, at the time, to withdraw the deposits immediately after the close of business on December 31st. These entries were false because they were made solely for the purpose of creating a false image of the financial condition of Arizona Savings and Loan Association. The obvious and sole reason for each deposit, the State urges, was to create or produce the entry on the ledger card.

We cannot agree. The authorities support the rule laid down by the landmark case of Coffin v. United States, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481, cited and quoted extensively by defendants in their briefs. This decision is authority for the proposition that a false entry is a concrete offense. Where an officer had misapplied bank funds by honoring the checks of an insolvent, the entry of such a wrongful transaction on the bank's books as an extension of credit was not a false entry, because it showed what had actually taken place.

Other cases adhering to the legal concept and reasoning stated in Coffin v. United States are Twining v. United States, 3 Cir., 141 F. 41; United States v. Young (D.C.), 128 F. 111; Dow v. United States, 8 Cir., 82 F. 904; Hayes v. United States, 8 Cir., 169 F. 101; Crenshaw v. United States, 6 Cir., 116 F.2d 737; Cooper v. United States, 4 Cir., 13 F.2d 16. (Also see the 1956 case of Meredith v. United States, 4 Cir., 238 F.2d 535)

In Cooper it was decided that where the defendant discounted the note of a financially irresponsible maker and endorser, it was not a false entry either to credit the funds to his account or to enter the note on the books as a debt due the bank. So, too, in Dow it was said:

"* * * if an overdraft is in fact made and allowed, under circumstances which make the transaction a fraud upon the bank, the entry of the transaction just as it occurred is not a false entry." 82 F. at 910.

And in Twining, it was held that although the obligations of certain persons to the bank were reduced unjustifiably, the entries in the books showing those reductions were true entries, because the reductions had actually been made. In all the cases cited in the preceding paragraph wrongful transactions were reported on the bank's books as they actually occurred.

In Young, the court of appeals, citing Coffin, held that the entry as a cash item on the books of a bank of a check known to be worthless was not a false entry.

"The cashier, by including the item here in his 'cash items,' did not declare or represent that the check upon which the item was based was good or supported by honest consideration. The entry makes no representation whatever as to that. The legal effect of the entry is but a written representation to whom it may concern that the cashier, in an actual transaction, had received the check, and that the amount stated was the basis of one item, which went with others to make up the aggregate 'cash items' which the entry declared the cashier had at the time. The several counts assail the truth of the entry solely on the ground that the amount of one of the items which entered into the aggregate 'cash items' was based on a check or paper which was fraudulent and worthless, and known to be so at the time of the entry. * * * The fraud which entered into the consideration or taking of the check by the bank cannot obliterate or recall the fact that such a check was actually taken by the bank in a transaction with the cashier, who truly recited the fact upon the books. It cannot be a false entry to enter upon the books of the bank a correct recital as to the taking of the check and its inclusion as an item in the aggregate 'cash items' of the bank. The truth of what the cashier actually did with the bank's cash as to this check, and statement he made about the cash in the entry on the books of the bank, is not altered in any way by the fact that he knew the check was 'worthless and fraudulent.' The entry, as we have seen, involved no assertion as to the value or bona fides of the check. It stated the exact truth of the transaction as it is entered on the cash account. It cannot be a false entry to make a recital on the books of the bank which speaks the truth." 128 F. at 114–115.

The Young decision went on to state that a dominant purpose of enforcing true entries was to spread upon the books of the bank accurate statements of things done by

bank officers, to the end that bank examiners might be better enabled thereby to trace and determine accurately, day by day, the actual condition and conduct of the business of the bank.

"Obedience to that command, truly making the entry, though the history of the check and the cashier's dealing with it may bring him under condemnation of other provisions, cannot make him a transgressor against this provision." 128 F. at 114.

"Having thus enacted safeguards for the preservation of the funds and credit of the association, and declared criminal penalties for transgression of regulations in those respects, Congress did not have to go over, and cannot be held by any legitimate construction to have intended to go over, the same ground, when it created the offense of making 'any false entry.'" 128 F. at 113.

The case before the bar is an attempt by the State to punish as an offense the accurate recording, in due course of business, of transactions that may have been fraudulent. In such a case, while the fraud might be punishable, the entry would not be.

In opposition to the Coffin decision, and for the avowed purpose of narrowly construing it, the State cites Agnew v. United States, 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624. A careful reading of that case shows a complete misinterpretation by the State of the decision rendered therein. To the contrary, the decision affirms the position here taken by the defendants. The facts are that the defendant Agnew caused a check for $4,300.00 belonging to the bank to be entered as a credit on his personal account. In other words, Agnew entered on the books of the bank as belonging to him a check which actually belonged to the bank. This was clearly a false entry, and the Supreme Court held that the instructions given by the trial court were correct:

" 'The crime of making false entries by an officer of a national bank with the intent to defraud, defined in the Revised Statutes of the United States, section 5209, includes any entry on the books of the bank which is *intentionally made to represent what is not true or does not exist*, with the intent either to deceive its officers or to defraud the association. The crime may be committed personally or by direction.

\*      \*      \*      \*      \*      \*

" 'Therefore the entry of a slip upon the books of the bank, *if the matter contained in that deposit slip is not true*, is a false entry. If the statement made upon the deposit slips is false, the entry of it in the bank, and the books of the bank, is false.'" (Emphasis supplied) 165 U.S. at 52, 17 S.Ct. at 241.

A reading of the instruction clearly shows that it is completely consistent with the Coffin case and the decision said so:

"The instruction as given was correct, and in accordance with the rule indicated in Coffin v. U. S., 162 U.S. 664, 16 Sup.Ct. 943 [40 L.Ed. 1109]. This being so, no error was committed in declining to give the others." 165 U.S. 53, 17 S.Ct. 242.

The State argues the instructions referred to as "others", which were offered and refused, set forth the same principles on false entry as were enunciated in the Coffin decision. The State is absolutely correct as to the import of the instructions offered, but completely misinterprets the reason for the refusal, which is clearly set forth:

"The true view of this branch of the case was fairly covered by the charge of the court * * *." 165 U.S. at 56, 17 S.Ct. at 243.

The State also cites United States v. Darby, 289 U.S. 224, 53 S.Ct. 573, 77 L.Ed. 1137, as qualifying the Coffin case. But again, the Darby decision is completely in line with the authorities following the path of the Coffin ruling. The Darby decision involved a promissory note bearing the forged signature of Bessie D. Darby as comaker and endorser, as the defendant well knew. With this knowledge, and in the course of his employment the cashier entered in the discount book the name of Bessie D. Darby as comaker and endorser. This entry was obviously false, because she was not the comaker or endorser. The court rightfully held the forged signature was a nullity and in doing so stated:

"To read the statute otherwise is to be forgetful of its aim. Its aim was to give assurance that upon an inspection of a bank, public officers and others would discover in its books of account a picture of its true condition. United States v. Corbett, 215 U.S. 233, 241, 242, 30 S.Ct. 81, 54 L.Ed. 173; Billingsley v. United States [8 Cir., 178 F. 653], supra. One will not find the picture here. Upon the face of the books there was a statement to examiners that paper with two signatures had been discounted by the bank and was then in its possession. In truth, to the knowledge of the maker of the entries, there were not two signatures, but one. * * *

"Nothing at war with our conclusion was said, much less decided, in Coffin v. United States, 156 U.S. 432, 462, 15 S.Ct. 394, 39 L.Ed. 481." 289 U.S. at 227, 53 S.Ct. at 574.

Billingsley v. United States, 8 Cir., 178 F. 653, cited by the State, can likewise be differentiated on its affirmance of the trial court's refusal to give instructions supporting the principles herein set forth. Statements made in that opinion, such as,

"It cannot be the law that officers of a bank may make a sham entry with the intent to deceive, and yet, merely be-

cause they go through the idle and deceitful form of making a transaction to which the entry might nominally but cannot really relate, protect themselves from the consequences of their real conduct. Such a holding would facilitate the vicious practice condemned by law." 178 F. at 663.

supports generally what the State asserts to be the law. On the facts, however, the Billingsley case cannot stand as authority against the opinion rendered herein. One count there dealt with an entry reflecting the sale of a note, when in truth and in fact it had not been sold. The other count dealt with a sham and forged note entered in the books by an officer who knew at the time it was forged and worthless and executed wholly without authority. The instruction given was tailored to cover a situation where the president and secretary of a corporation executed, without authority, a corporate note.

Laws v. United States, 10 Cir., 66 F.2d 870, clearly indicates the factual distinction between the Billingsley and Coffin decisions. It quoted with approval the Billingsley case and used it as authority for the proposition that

"An entry which reflects an actual transaction exactly as it occurred is not a false entry. * * * Twining v. United States (citation); Dow v. United States (citation). * * * the

transaction to which the entry relates must be real and substantial, and not merely formal. Billingsley v. United States (citation)." 66 F.2d at 873.

The opinion went on to say that in the instant case Laws had no authority to draw checks on the account of the insurance company. Laws, as cashier of the bank knew this.

"It follows that the issuing of such checks by Laws, the depositing thereof in the bank, and the charging thereof to the account of the Insurance Company did not in fact reduce the balance of the Insurance Company's deposit. It remained unaffected by such unauthorized orders. The liability of the bank to the Insurance Company and its credit with the bank remained exactly the same after, as before such checks were drawn, deposited, and charged to its account. Laws and the bank knew this.

"Had the charges in the indictment been predicated on the entries of credit in the account of the Realty Company because of the deposit of checks drawn by Laws on the Insurance Company's account, the case would have fallen within the principles announced in the cases cited in Note 3. The credits, al-

"3. "Coffin v. United States, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481; Twining v. United States (C.C.A.3) 141 F. 41; Dow v. United States (C.C.A.8) 82 F. 904; Hayes v. United States (C.C.A.8) 169 F. 101; Cooper v. United States (C.C.A.4) 13 F.(2d) 16.

though unauthorized, were actually given. But here the reduction in the deposit of the Insurance Company, reflected by the entries, did not in fact occur.

"We conclude therefore that the entries charged in counts 6, 7, and 8 did not reflect the true balances on the dates entered in the deposit of the Insurance Company, and that they constituted false entries within the meaning of the statute." 66 F.2d at 873–874.

Turning again to the case at bar the State also attacks the validity of defendants' contentions by asserting that the withdrawal of said funds *was* recorded by false entries. In all three instances the checks drawn by the branch offices, although dated January 2nd, were stamped by a depository bank as having been theretofore deposited on December 31st. Counsel for the State further substantiate this claim by pointing out that George Sheppard (certified public accountant, retained by the State to audit the books and records of the Association and other Heron companies) testified that during these transactions defendant Heron at no time had sufficient funds in the bank to cover any of the three checks drawn for deposit. The State contends the entries are therefore false, in that they were not accurate recordations of the transaction.

■ This position is not sustained by the facts or the law. An entry noting the de-

posit of a check drawn on insufficient funds is not a false entry. In fact, a *failure* to record timely the receipt of such a check might well constitute a violation of the statute. There is no rule, regulation, or statute requiring a savings and loan association, or even a banking institution, to wait until a check clears the drawee bank before making an entry showing a deposit. Banking practice is not so conducted. In any event, the checks were in fact honored by the drawee bank. Under the authorities cited in support of our position here, an insufficient funds check, known to be such, should be recorded when received.

■ Claimed proof of statutory violation by reason of a false chronological recording of the withdrawal data likewise is without merit. The indictment charges false *deposit,* not *withdrawal.* Evidence surrounding the withdrawal of the funds would have probative value here only on the question of intent to defraud, and is therefore not relevant. There has been no "false entry." Normally, as counsel argue, the existence of a false entry is a question of fact to be found by the jury. We agree, Meredith v. United States, 4 Cir., 238 F.2d 535. But this argument likewise fails when we consider the uncontradicted proof and the wording of the instructions to the jury as to what constituted a false entry. Defendants could not be convicted under counts IX, X and XI by the facts shown on the face of the record. As a matter of law, there

has been a fatal variance between the charges laid and the proofs adduced.

> "It is the settled rule that indictments should be free from ambiguity, and be so expressed as to leave no doubt in the mind of the court and of the accused of the exact offense intended to be charged, and the general character of the facts upon which the government bases the case; for, unless this is done, the accused is not advised of the matters which he is required to meet in defending himself." Dow v. U. S., supra, 82 F. at 909, and authorities cited therein.

> "A defendant may not be charged with one crime and then convicted thereof on proof of entirely different offense." Pass v. State, 34 Ariz. 9, 12, 267 P. 206, 207.

See also Merrill v. State, 42 Ariz. 341, 26 P.2d 110; 5 Wharton, Criminal Law and Procedure § 1762 (1957).

Subsection (B) of Rule 145 of our Rules of Criminal Procedure, 17 A.R.S. provides, in part, that

> "No variance between the allegations of an indictment * * * which state the particulars of the offense charged, whether amended or not, and the evidence offered in support thereof shall be ground for the acquittal of the defendant."

Subsection (D) reads,

> "No motion made after verdict based on any such * * * variance shall be sustained unless it is affirmatively shown that the defendant was in fact prejudiced thereby in his defense upon the merits."

The provisions of this rule, however, have not been referred to this Court by the State, nor does the record reflect an attempt at any time to amend counts IX, X, and XI of the indictment to conform to evidence of this nature. Manifestly, to allow the State to assert for the first time on appeal that the entries covering the withdrawals were false would be to prejudice the defendants in their defense. This proposition is not asserted in the indictment nor in the record, nor did the State offer any proof to substantiate false bookkeeping or fraudulent intent in the withdrawal entries themselves.

This decision involves the construction of a Statute of the State of Arizona. The question as to whether it was a crime to make a deposit at the end of the month of December and immediately withdraw said amount early in January is not before this Court. No crime has been charged with respect to that issue and we are not constrained here to trace the genesis of the principle of fraud, nor to declare that it is axiomatic and elementary that this practice constitutes such.

■ As the convictions on counts IX, X, and XI must be turned aside, count VIII

of the indictment, charging conspiracy to commit the crimes set forth in these counts, must also fall. If the overt acts charged are not criminal, then an agreement to commit those acts cannot be a criminal conspiracy. The object must be the accomplishment of crime, A.R.S. §§ 13–331 and 332. At least one of the overt acts alleged must be proved. A.R.S. § 13–333. Also, State v. Sullivan, 68 Ariz. 81, 200 P.2d 346.

We turn now to the remaining conspiracy count charging the filing of false reports with the Superintendent of Banks. In what manner were these reports false? We find no evidence in the record, and the State refers us to none, that the financial statements did not correctly show the actual deposits on hand by the Association as of December 31, 1956, and December 31, 1957. Of necessity, by the testimony and by clear inference, they contained or reflected the deposits described as false in counts VIII, IX, X, and XI. The State, attempting to refute the defendants' argument here, again points to the activities of December and January in the crucial years, and the filing of the annual report. The testimony of George Sheppard, counsel argues, notes heavy deposits and immediate withdrawals.

If this evidence cannot support a charge of false entry, manifestly it cannot support one of false report. No evidence was introduced to show in what respects the reports were false. Again, one of the overt acts charged must be proved and the record is devoid of such proof. Payne's testimony that the entries accurately reflected the transactions as they occurred was uncontroverted, as was other testimony that entries in the records of the Association, within the knowledge of the witness, were honestly made and accurately showed the transactions. The jurors were instructed that Payne was not a party to any conspiracy.

Thus, all the counts on which defendants were convicted must fall if the alleged false entries on the ledger cards or the reports, within the meaning of A.R.S. § 10–193(A) (2) cannot stand. We have ruled that they cannot. The trial court therefore erred in refusing to grant the motion of both defendants for a directed verdict of acquittal.

It is unnecessary to discuss other objections raised to the indictment since those already discussed are fatal to it.

For the above and foregoing reasons the judgment of guilty entered by the trial court on counts VII, VIII, IX, X, and XI is reversed with directions to enter judgments of not guilty.

BERNSTEIN, C. J., and UDALL, STRUCKMEYER and JENNINGS, JJ., concur.

NOTE: Justice LORNA E. LOCKWOOD having disqualified herself, The Honorable LAURANCE T. WREN, Judge of the Superior Court of Coconino County, Arizona, was called to sit in her stead and participate in the determination of this appeal.